**In re DEBMAR CORP., Debtor.**

**DEBMAR CORP., Debtor, and Jeannette Tavormina, as trustee for the estate of Debmar Corp., Plaintiffs,**

**v.**

**UNITED STATES of America, Internal Revenue Service, Defendant.**

**Bankruptcy No. 81–01883–BKC–SMW.**

**Adv. No. 81–0623–BKC–SMW–A.**

United States Bankruptcy Court, S. D. Florida.

July 19, 1982.

Louis Phillips, Miami, Fla., for trustee.

Martin L. Sandler, Miami, Fla., for debtor.

Ira F. Gropper, Asst. U. S. Atty., Miami, Fla., William M. Smith, Atty. Gen., Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause came to be heard upon Plaintiffs' complaint to recover property and was tried by the Court. The Court, having heard the testimony and examined the evidence presented, having observed the candor and demeanor of the witnesses, having considered the argument and stipulations of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

On November 13, 1981, Debmar Corp. ("Debmar") filed a petition in this Court under Chapter 11 of the Bankruptcy Code. On November 20, 1981, Debmar [1] instituted this action pursuant to 11 U.S.C. §§ 542 and 543 seeking a turnover of property from the Internal Revenue Services. The complaint later was amended to add a claim for the avoidance of a preferential transfer under 11 U.S.C. § 547. This civil action arises in a case under title 11, United States Code, and therefore this Court has jurisdiction pursuant to 28 U.S.C. § 1471.[2]

This dispute arose from the levy by the IRS on Debmar's bank accounts and on a debt owed to Debmar. Debmar asserts that the funds paid to the IRS from the bank account and by Debmar's account debtor are "property of the estate" subject to turnover pursuant to 11 U.S.C. § 542 or alternatively that the IRS is a custodian of Debmar's property under 11 U.S.C. § 543 or finally that the transfers to the IRS are preferences voidable under 11 U.S.C. § 547.

On various dates from November 18, 1980, to November 13, 1981, the IRS duly filed six notices of federal tax lien against Debmar pursuant to § 6323 of the Internal Revenue Code for unpaid taxes totalling $233,380.79. On November 13, 1981, Debmar filed a petition under Chapter 11 and was continued in possession until the Trustee was appointed. However, on or about November 6, 1981, the IRS served notices of levy upon Systems Development Corporation, which owed funds to the Debtor, and on Commercial Bank and Trust Company, where Debmar had bank accounts. By a check dated November 10, 1981, Systems Development Corporation paid funds it owed Debmar to the Internal Revenue Service, which received the check after the petition was filed. Commercial Bank and Trust Company also paid the amount in Debmar's bank accounts to the IRS prior to the petition being filed; when the IRS received the check is not shown by the evidence. The funds received were applied to Debmar's tax liability to the government.

■ The Trustee asserts that the IRS is a custodian of the funds paid to it and should return them pursuant to 11 U.S.C. § 543. However, the definition of custodian in 11 U.S.C. § 101(10) belies that argument. This Court finds Judge Friendly's discussion of this point in *United States v. Whiting Pools, Inc.*, 674 F.2d 144, 148-149 (2d Cir. 1982), to be both persuasive and complete, and this Court concludes that the IRS is not a custodian subject to the turnover provisions of 11 U.S.C. § 543.

---

1. Jeanette Tavormina was appointed trustee of Debmar's estate pursuant to 11 U.S.C. § 1104. By Order dated May 18, 1982 she was joined as a plaintiff in this action.

2. This Court's reading of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, - U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (holding the grant of jurisdiction to the Bankruptcy Courts unconstitutional) reaches the conclusion that the Supreme Court means its decision to have effect only from October 4, 1982, the date to which its judgment is stayed, and that matters presently pending before the Bankruptcy Courts are not to be affected.

The Trustee also has asserted that the funds should be turned over pursuant to 11 U.S.C. § 542. The amounts seized clearly are not of inconsequential value, and the Trustee could use them if she provided the IRS with adequate protection of its interests and received the consent of the IRS or authorization of this Court pursuant to 11 U.S.C. § 363(c)(2), as the funds clearly would be cash collateral if they were property of the estate. *See, e.g., In re Bristol Convalescent Home, Inc.,* 12 B.R. 448, 451 (Bkrtcy.D.Conn.1981). Accordingly, the crucial issue is whether or not the funds paid to the IRS are property of the estate of Debmar.

Two recent U. S. Court of Appeals decisions have dealt with this issue, albeit in different factual patterns. In *In re Cross Electric Co.,* 664 F.2d 1218 (4th Cir. 1981), the Fourth Circuit Court of Appeals held that an account receivable of a debtor subject to a pre-petition levy of a federal tax lien was not "property of the estate" and reversed lower court orders directing the account debtor to pay the account to the debtor.[3] The Fourth Circuit held that the levy operated as a virtual transfer of the debtor's property to the government and that the only right remaining to the debtor was to redeem the property by paying the tax due, which would not be done because the amount of the tax exceeded the amount of the account receivable levied upon. The Second Circuit, in *United States v. Whiting Pools, Inc.,* 674 F.2d 144 (2d Cir. 1982), rejected that approach in a case involving different facts. In *Whiting Pools,* the IRS levied upon and seized all of the debtor's tangible property, which had a going concern value substantially in excess of the tax due and a liquidation value substantially less than the tax due. Prior to the sale of the property by the IRS, the debtor filed a Chapter 11 petition. In a very cogent analysis of the relationship of the lien provisions

of § 6331 *et seq.* of the Internal Revenue Code with the "property of the estate" and turnover concepts in §§ 541 and 542 of the Bankruptcy Code, Judge Friendly concluded that the IRS's position with respect to tangible property seized but not sold prior to the filing of a bankruptcy petition is analogous to that of a secured creditor in possession, that the IRS's interpretation would prevent a debtor in possession or trustee from obtaining a turnover of property levied upon by the IRS as well as property repossessed by a secured creditor or held by a pledgee after a default, and that the tangible property levied upon remained "property of the estate." *See Whiting Pools* at 149–160.

■ While Judge Friendly clearly limited the opinion in *Whiting Pools* to a situation involving "an IRS levy on tangible property in which the debtor has an equity" (674 F.2d at 159), the opinion in *In Re Bristol Convalescent Home, Inc.,* 12 B.R. 448 (Bkrtcy.D.Conn.1981) applied the same basic analysis to a levy upon intangible property, a debt owed to the debtor. For the reasons expressed in *Whiting Pools* and *Bristol Convalescent Home,* this Court concludes that a pre-petition levy by the IRS on debts due the debtor which are not paid pre-petition does not divest the debtor of ownership of the debts and thus that bank accounts and accounts receivable subject to an IRS levy are "property of the estate" within the meaning of 11 U.S.C. § 541 and are subject to turnover under 11 U.S.C. § 542, subject, of course, to the trustee or debtor in possession providing adequate protection and complying with the safeguarding provisions for cash collateral found in 11 U.S.C. § 363(c)(2).

■ However, this conclusion does not resolve the dispute here. The facts are that the amounts due from the account debtor and the bank to the debtor were paid to the

---

**3.** On essentially the same pattern of facts, *In re Bristol Convalescent Home, Inc.,* 12 B.R. 448, 450 (Bkrtcy.D.Conn.1981) held, to the contrary, that "the IRS levy, no matter how extraordinary under the Internal Revenue Code, remains a *lien,* prior to actual sale of the property, and

does not prevent the property levied upon from becoming property of the estate" subject to turnover under § 542. The court held that the account due the debtor was property of the estate subject to § 542 turnover.

IRS before the Chapter 11 petition was filed. The effect of the payment to the IRS was to discharge the account debtor's and the bank's liabilities to Debmar. Section 6332(d), Internal Revenue Code. Thus, when the petition was filed, there were no bank account balances in Debmar's name and no account due from the account debtor, and thus the nonexistent bank accounts and account receivable could not become "property of the estate." The effect of paying the IRS was to reduce Debmar's tax liability, a situation completely different from that in *Whiting Pools* where the IRS would have to sell the levied-upon property and apply the proceeds to reduce the tax liability.[4] Since the payments served to reduce Debmar's tax liability by being applied to that liability, the payments are best characterized as a partial satisfaction of the tax liens rather than a conveyance of Debmar's intangibles. In common parlance, the IRS was paid pre-petition; there is no suggestion in the record before this Court or in reason that the IRS held the funds in trust rather than applying them to the tax liability. Accordingly, the account and bank accounts upon which the IRS levied were not property of the debtor at the time of the filing of the petition and thus did not become "property of the estate" under 11 U.S.C. § 541.

This conclusion that the pre-petition payment to the IRS resulted in there not being "property of the estate" to be turned over pursuant to 11 U.S.C. § 542 leads to the Trustee's next claim, that the payment was a preferential transfer avoidable under 11 U.S.C. § 547.

Section 547(b) contains the five elements of an avoidable preferential transfer, while § 547(c) sets forth six transfers which are not avoidable even if the five elements of § 547(b) are established. The facts are that the transfer of funds to the IRS was a transfer of Debmar's property to one of its creditors made within ninety days of the filing of the petition on account of an antecedent debt owed by Debmar. Two elements remain, the preferential effect of the transfer and insolvency. Although not briefed by the parties, a third issue is significant in this action—§ 547(c)(6) provides that the "fixing" of a statutory lien not avoidable under § 545 is not avoidable under § 547.

To determine the effect of § 547(c)(6) requires an analysis of 11 U.S.C. § 545 and § 6323 of the Internal Revenue Code. Briefly, as it applies to federal tax liens, § 545(2) permits a trustee to avoid the fixing of a statutory lien on property of the debtor which is not perfected or enforceable on the date of the petition against a hypothetical bona fide purchaser. Section 6323(b) of the Internal Revenue Code protects certain types of transactions (such as transfers of securities, purchases of personal property at retail or in a casual sale, and miscellaneous other transactions) from the effect of a duly filed federal tax lien, such as those involved in this action. Thus, if the federal tax lien on the account due from Systems Development Corporation or another bank account is not perfected or enforceable against a bona fide purchaser as a result of § 6323(b) of the Internal Revenue Code, then the federal tax lien on those

4. For purposes of determining when the transfer to the IRS occurred, this Court concludes that the date the account debtor or bank draws a check payable to the IRS and constructively delivers it to the IRS by putting it in the mails addressed to the IRS is the date of transfer to the IRS and the effective date of the discharge of liability to the taxpayer-debtor, since the drawer of the check presumably would be liable on the check to the IRS if its bank dishonored the check. *See* § 673.413(2), *Florida Statutes.* This situation is different from that of a bank's payment of a check drawn by the *debtor,* where the transfer of the debtor's property is considered to have occurred at the time of the bank's payment of the check and not at the time the debtor drew the check, at least when a preferential transfer is sought to be avoided. *See, e.g., In re Duffy,* 3 B.R. 263 (Bkrtcy.S.D.N.Y.1980). Policy reasons support this conclusion: A person who complies with the IRS levy should not be exposed to potential liability to the IRS because he honored the levy and then stopped payment on the check and should not be exposed to liability to a debtor for *not* stopping payment on the check. To allow that possibility would impede the efficient collection of taxes and thus would be contrary to the public good.

accounts could be avoided. Subsection (1) of § 6323(b) protects a bona fide purchaser of "securities" from the effect of the tax lien; "security" is defined in § 6323(h)(4) to mean stocks and bonds, negotiable instruments, and "money". It is clear that the accounts are not stocks or bonds and are not negotiable instruments. Unfortunately for the Trustee, the term "money" within the definition of "security" has been interpreted as meaning not "the right to receive money" but "the kind that one could bite, feel or pinch." *Worley v. United States*, 340 F.2d 500, 502 (9th Cir. 1965). Likewise, a commercial checking account has been held not to be within the definition of "security." *United States v. Asher*, 54–2 U.S. T.C. ¶ 9454 (S.D.Cal.1954). Since there are no other exceptions in § 6323(b) which conceivably could include an account receivable or checking account the transfer of which to a bona fide purchaser would be valid against the federal tax lien, then the conclusion naturally follows that the fixing of the federal tax liens on the account receivable and on the checking account is not avoidable under § 545 and thus, by virtue of § 547(c)(6), is not avoidable under § 547(b).

Ordinarily, the pre-petition satisfaction of or payment on a debt secured by an unavoidable lien is not a preference, since the transferee would receive as much in liquidation as it actually received (i.e., no preferential effect) or, put another way, there has been no diminution of the estate. *See generally 4 Collier on Bankruptcy* ¶ 547.21 (15th ed. 1979). However, the argument is made that the satisfaction of a federal tax lien can have a preferential effect. The theory is that if there were a liquidation under Chapter 7 of the Bankruptcy Code, the property would be distributed first to claimants accorded priority by § 507(a)(1)–(5) and only then to the payment of the federal tax lien; in other words, the tax lien would be subordinated to those priority claims. *See 11 U.S.C. § 724(b).* Thus, the IRS conceivably could get more of its claim paid by keeping the pre-petition payment than if it surrendered the payment and was paid in accordance with § 724(b). Accord-

ingly, if the other four elements of a preferential transfer were met, the satisfaction of a federal tax lien could have a preferential effect. *See generally 4 Collier on Bankruptcy* ¶ 547.42 (15th ed. 1979); Nowak, "Turnover Following Prepetition Levy of Distraint under Bankruptcy Code § 542", 55 *Am.Bankr.L.J.* 313, 318–322 (1981). This argument is premised upon the literal wording of § 547 and the legislative history which shows that an earlier version of § 547(c)(6) would have protected both the fixing and the satisfaction of a statutory lien not avoidable under § 545. *See* Nowak, 55 *Am.Bankr.L.J.* at 318. However, this Court has substantial doubts that Congress intended to require the IRS to disgorge payments received on account of tax liens within the preference period, based upon such a complicated legal analysis, without a clear statement of intent in the legislative history, although this Court agrees that the literal wording of §§ 547 and 724(b) can reach that result.

This Court does not need to reach a decision on that argument, however. First, there is no clear and convincing proof of preferential effect even applying § 724(b). The Schedules of Liabilities and Assets disclose no claims entitled to priority under § 507(a)(2)–(5). Schedule B–2 discloses in excess of $25,000 of personal property unencumbered other than perhaps by the federal tax liens (excluding the funds paid to the IRS). Furthermore, the Trustee testified that some $4,000 per month would be available to pay the IRS as "adequate protection" payments if a turnover were ordered. While the Court recognizes that there probably will be administrative claims entitled to priority under § 507(a)(1), there was no evidence elicited to show the extent of those claims, and the Court finds that there will be more than enough unencumbered assets and revenue generated to pay the Trustee's fee as well as fees for professionals. Thus, even if the federal tax liens were subordinated to the sixth priority enjoyed by unsecured tax claims (§ 507(a)(6)), the evidence indicates that the IRS still would get paid at least the amount it re-

ceived, approximately $70,000 out of a total claim for $233,000. Accordingly, the Court finds that the payments to the IRS were not proven to have a preferential effect within the terms of 11 U.S.C. § 547(b)(5).

Secondly, the Debtor, who participated in the trial, offered the Schedules of Liabilities and Assets into evidence without objection from any party. The Schedules reflect that Debmar was solvent on the date of the filing of the petition, and thus the clear inference from that evidence is that Debmar was solvent within the week preceding the filing of the petition. *See generally* 4 *Collier on Bankruptcy* ¶ 547.27 (15th ed. 1979). Although the Trustee, who is very experienced in the liquidation of property, testified to liquidation values of certain of the property, there was no testimony about the value of other assets which are listed in Schedule B–2. Furthermore, there was no evidence to contradict the going concern valuation placed upon Debmar's business by an appraiser, and Florida law appears to allow the sale of a business such as the one engaged in by Debmar. *See* § 400.179, *Florida Statutes.*

Ordinarily, a trustee would rely upon the presumption in § 547(e)(4) that the debtor was insolvent on and during the ninety days preceding the filing of the petition. Here, however, evidence was introduced that Debmar was solvent on the date of the filing of the petition. Under the "bursting bubble" theory of the effect of presumptions, applicable here, if evidence of the contrary fact is admitted, the presumption disappears and the burden of proof is on the plaintiff to establish the fact. *See* Cleary, *McCormick's Handbook of the Law of Evidence,* § 345 (2d ed. 1972); 4 *Collier on Bankruptcy* ¶ 547.26 (15th ed. 1979). With the destruction of the presumption, the fact of insolvency had to be established by clear and convincing proof, which was not done. Accordingly, this Court finds that the fact of insolvency was not established.

Since two elements of a preferential transfer were not established, the Trustee is not entitled to avoid the partial satisfaction of the federal tax liens, even if such satisfaction is theoretically possible under the arguments discussed above.

In summary, the IRS is not a custodian within the meaning of 11 U.S.C. § 543; the funds transferred to the IRS were not proven to be "property of the estate", since payment occurred pre-petition, and thus are not subject to turnover under 11 U.S.C. § 542; and there was insufficient proof to establish all of the elements of a preferential transfer, even if the transfers were not protected by 11 U.S.C. § 547(c)(6).

The Court will enter a judgment in conformity with these findings of fact and conclusions of law.