In re PROFESSIONAL TECHNICAL
SERVICES, INC., Debtor.

PROFESSIONAL TECHNICAL
SERVICES, INC., Plaintiff,

v.

INTERNAL REVENUE SERVICE,
Government Services Administration,
Division of Employment Security of the
State of Missouri, United States Army
Corps of Engineers, Mercantile Bank,
N.A. and Royal Bank, Defendants.

Bankruptcy No. 86–02478–BSS.
Adv. No. 86–0354–BSS.

United States Bankruptcy Court,
E.D. Missouri, E.D.

March 31, 1987.

Stuart J. Radloff, Clayton, Mo., for debtor.

Jill S. Newman, Asst. U.S. Atty., St. Louis, Mo., Robert D. Metcalfe, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., and Sandy Bowers, Chief Counsel, Div. of Employment Sec., Jefferson City, Mo., for defendants.

## MEMORANDUM OPINION

BARRY S. SCHERMER, Bankruptcy Judge.

Professional Technical Services, Inc., (hereinafter "PTS"), filed a Voluntary Chapter 11 Petition on October 3, 1986. PTS provides janitorial services to busi-nesses in the St. Louis and Jefferson City, Missouri areas. On October 27, 1986 PTS filed a Complaint For Turnover requesting turnover of certain receivables and cash accounts constituting property of the estate which were withheld or frozen pursuant to Internal Revenue Service (hereinafter the "IRS") Notices of Tax Lien, including: [1]

1.) $52,066.95 [2] owed PTS by the Government Services Administration (hereinafter the "GSA") for pre-petition services performed by PTS at 210 N. Tucker and 1520 Market St. in St. Louis, Missouri;

2.) $8,510.61 owed PTS by the State of Missouri Division of Employment Security (hereinafter the "DES") for pre-petition services performed by PTS at 421 E. Dunklin St., Jefferson City, Missouri;

The PTS Complaint further alleges that the interest of the IRS is inferior to the PTS interest in the aforementioned property since said tax liens were not fully perfected on October 3, 1986 and, additionally such property is necessary for its effective reorganization. On November 12, 1986, PTS filed a Supplemental Complaint requesting turnover of the GSA receivable and alleging that the Department of Labor (hereinafter the "DOL") claims an interest in the receivable due from GSA ($52,066.95) because it notified the GSA of its claim through a withholding letter dated October 1, 1986.

On December 3, 1986, the United States of America filed its Answer on behalf of the IRS [3] denying that PTS is entitled to the aforementioned receivables and accounts, and further denying that the inter-

---

1. PTS' Complaint For Turnover alleged four additional debts which are no longer at issue in this case: (1) a $2,588.61 debt owed PTS by the United States Army Corps of Engineers (hereinafter the "Corps"), for pre-petition services performed by PTS, was paid by the Corps to the IRS, thus eliminating any claim of PTS against the Corps; (2) a claim for $10,000.00 on deposit in PTS' account no. 1476203 with Mercantile Bank was dismissed by PTS without prejudice on December 4, 1986; (3) a claim for $363.24 on deposit in PTS' account no. 438634 with Royal Bank was paid by the bank to the IRS pursuant to the levy thus extinguishing PTS' claim against Royal Bank (see Plaintiff's Exhibit 3: a check

from Royal Bank to the IRS dated October 20, 1986) and (4) a claim was alleged for $10,879.95 in PTS' receivables withheld by approximately 35 other account debtors; but no evidence was introduced as to these accounts and this Court therefore makes no judgment concerning such receivables.

2. Although PTS' Complaint For Turnover alleged that $73,503.22 was due PTS and withheld by the GSA, the parties stipulated at trial that only $56,066.95 was withheld by the GSA.

3. The IRS was represented by the Tax Division of the Justice Department.

est of the IRS in said funds is inferior to that of PTS. The IRS alternatively requested that if turnover is granted it be afforded adequate protection of its interest in the receivables.

On December 4, 1986, the United States of America filed an Answer on behalf of the DOL, and the GSA,[4] in which it denied that the interest of PTS in the aforementioned receivables and accounts was superior.

The DES filed its Answer to the PTS Complaint on December 3, 1986, denying PTS' entitlement to the receivables under the contract between PTS and the DES. The Answer of the DES further asserted that PTS owed the DES $16,133.36 for prepetition unpaid employer contributions taxes, and that PTS agreed to pay the DES $2,500.00 per month from July 1986 until such debt was extinguished.

FACTS

I. *PTS v. GSA*

1.) The GSA contracted with the SBA to obtain janitorial and maintenance services for the federal buildings located at 1520 Market Street, St. Louis, Missouri and 210 North Tucker, St. Louis, Missouri. The SBA subcontracted with PTS for the provision of those janitorial services.

2.) The GSA currently has accounts payable due PTS in the amount of $32,124.72 for services performed under contract number GS–06P86GXC0061 at 210 North Tucker during August and September, 1986.

3.) The GSA currently has accounts payable due PTS in the amount of $19,942.23 for services performed under contract number GS–06P7560 at 1520 Market Street during August and September, 1986.

4.) The GSA has withheld payment of the aforementioned accounts payable, totaling $52,066.95 pursuant to: (1) a Notice of Levy (Government Exhibit N) served upon it by the IRS dated September 23, 1986, and stamped "Received" by the GSA September 25, 1986; and (2) a withholding letter issued by the DOL (Government Exhibit P), dated October 1, 1986 and stamped "Received" by the GSA on October 2, 1986.

II. *PTS v. IRS*

1.) Prior to October 3, 1986, the IRS made assessments against PTS (Government Exhibits A, B, C, and D) for unpaid Federal Insurance Contributions Act (FICA, form 941) taxes and Federal Unemployment Tax Act (FUTA, form 940) taxes for an amount which the Debtor stipulates (Plaintiff's Trial Brief p. 2) were $87,870.56.

2.) The IRS sent a Notice of Levy dated September 23, 1986 (Government Exhibit N) to the GSA pursuant to the aforementioned debts.

III. *PTS v. DOL*

1.) Prior to October 3, 1986, the DOL through Mr. Sheilds, (a Compliance Officer with the Wage and Hour Division of the DOL) conducted an investigation of PTS' payroll records.

2.) As a result of said preliminary investigation the DOL found PTS liable to employees for $38,240.65 in wages not paid in August and September, 1986, which were earned by services employees performed at 210 North Tucker and 1520 Market Street.

3.) The DOL determined the aforementioned non-payment of employee wages to be a violation of the Service Contract Act of 1965, 41 U.S.C. § 351 *et seq.*

4.) Pursuant to 41 U.S.C. § 351 *et seq.* the DOL issued a withholding letter dated October 1, 1986 (Government Exhibit P) requesting the GSA to withhold $38,240.65 of the amount due PTS for services performed at 210 North Tucker and 1520 Market Street.

5.) Pursuant in part to the aforementioned letter dated October 1, 1986, the GSA is withholding $52,066.95 of the amount due PTS.

IV. *PTS v. DES*

1.) As of October 3, 1986:

a.) The DES owed PTS $8,510.61 for services performed in September, 1986 at the State Office Building (DES) located

---

**4.** The DOL, and the GSA were represented by the United States Attorney's Office.

at 421 E. Dunklin Street, Jefferson City, Missouri.

b.) PTS owed DES more than $8,510.61 for unpaid pre-petition unemployment taxes.

JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151 and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(E).

DISCUSSION

Pursuant to Section 1107(a) of the Bankruptcy Code (hereinafter the "Code"), "a debtor in possession shall have all the rights, ... powers, ... functions and duties, ... of a trustee serving in a case under this Chapter." 11 U.S.C. § 1107. Section 542 of the Code provides for turnover to the trustee (and thus the debtor in possession), of "a debt that is property of the estate and that is matured, payable on demand, or payable on order," 11 U.S.C. § 542(b), and of property that may be used, sold, leased or exempted, 11 U.S.C. § 542(a). Section 542(a) and (b) of the Code both refer only to those debts which are property of the estate. Section 542(b) explicitly states this limitation, and Section 542(a) is similarly limited in its application through the incorporation of Code Sections 363 and 522 which provide for the use, sale, lease, and exemption of estate property. 11 U.S.C. §§ 363(b)(1), 522(b). Thus the threshold question is whether the aforementioned accounts receivable due PTS are property of the estate.

I. *PTS v. IRS*

■ Section 541 of the Code defines property of a debtor's estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This is clearly a broad definition which encompasses virtually any identifiable interests which a debtor may have in property. But even a definition as broad as this cannot bring property within the ambit of the debtor's estate if the debtor has no property interests at the commencement of a Chapter 11 proceeding. If the statutory requirements for the completion of an IRS levy are properly fulfilled a debtor's rights in property levied upon may be extinguished.

An examination of the interests of a debtor in property levied upon by the IRS properly begins with a review of the Supreme Court's decision in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In that case the Court held that where there is a pre-petition IRS levy the "ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale ... until such a sale takes place, the property remains the debtor's and thus is subject to the turnover requirement of § 542(a)." *Whiting Pools, Inc.*, 462 U.S. at 211, 103 S.Ct. at 2316. As interpreted by a subsequent decision, "The *Whiting Pools* case stands for the limited proposition that a debtor's interest in tangible property is not extinguished by a pre-petition governmental levy which is in an amount less than the value of the property seized." *Diflorio v. United States*, 30 B.R. 815, 818 (N.D.N.Y.1983).

■ In the case of a pre-petition IRS levy of the debtor's tangible property having a value which exceeds the amount of tax owed, two property interests of the Debtor can be identified: 1) the debtor's right to redeem the property prior to an IRS sale (26 U.S.C. § 6337); and (2) the Debtor's right to any surplus received upon the sale of property (26 U.S.C. § 6342). *Whiting Pools, Inc.*, 462 U.S. at 211, 103 S.Ct. at 2316. These identifiable interests justify the turnover of the debtor's property under Section 541 of the Bankruptcy Code subsequent to an IRS levy, and prior to an IRS sale. In the case of tangible property the IRS procedures for notice and sale (26 U.S.C. § 6335) have the necessary purpose of protecting redemption and surplus rights. But where the property is cash or a cash equivalent (less than the amount of the tax assessed), this Court finds no such rights to protect, thus the

§ 6335 procedures of notice and sale serve no purpose and are not necessary for the completion of the IRS levy. An IRS levy is completed as to cash or a cash equivalent when the procedures found in § 6331 and § 6332 of Title 26 are performed. Once completed, the debtor's interest in the property levied upon is extinguished unless some remaining interest can be identified.

This Court is not persuaded by the rationale of several opinions cited as support for the proposition that a debtor retains an interest in property post-levy sufficient to qualify as "property of the estate". In two cases involving accounts receivable the conclusion that service of an IRS notice of levy was insufficient to sever a debtor's interests and transfer ownership of the property levied upon was not supported by the identification of any interest retained by the debtor other than those of redemption and surplus which have no application outside of the context of saleable property. *In re Suppliers, Inc.*, 41 B.R. 520 (Bankr. E.D.Ky.1984); *Matter of Bristol Convalescent Home*, 12 B.R. 448 (Bankr.D.Conn. 1981). Three other cases involving bank accounts similarly held that a debtor's interests survived IRS levies but provided no more persuasive reasoning and identified no other interest remaining with the debtor post-levy. *In re Dunne Trucking Co.*, 32 B.R. 182 (Bankr.N.D.Iowa 1983); *In re Davis*, 35 B.R. 795 (Bankr.W.D.Wash.1983); and *Matter of Computer Management, Inc.*, 40 B.R. 201 (Bankr.N.D.Ga.1984).

*In re Debmar Corp.*, involved both bank accounts and accounts receivable and purported to support the application of *Whiting Pools* to such intangibles, but it is decided on a substantially different set of facts and offers only dicta relevant to this discussion. *In re Debmar Corp.*, 21 B.R. 858 (Bankr.S.D.Fla.1982). In the *Debmar* case the funds held by the account debtor and the bank were paid to the IRS pre-petition, thus the agency had not only a levy, but actual possession. The *Debmar* Court similarly "concludes that a pre-petition levy by the IRS on accounts due the debtors which are not paid pre-petition does not divest the debtor of ownership of the debts and thus bank accounts and accounts re-ceivable subject to an IRS levy are 'property of the estate' within the meaning of 11 U.S.C. § 541 and are subject to turnover under 11 U.S.C. § 542." *Debmar Corp.*, 21 B.R. at 860. The Court however, simply adopts the opinions in *Whiting Pools* and *Bristol* "for the reasons expressed" therein without offering any further rationale. *Debmar Corp.*, 21 B.R. at 860. The *Debmar* Court also admits that its aforementioned "conclusion does not resolve the dispute here", thus recognizing its conclusion as dicta. *Debmar Corp.*, 21 B.R. at 860.

This Courts examination of the case law supporting the application of the *Whiting Pools* decision to cash or cash equivalents revealed no rights other than those of redemption and surplus which apply only to saleable property. These rights however, are inapplicable to cases involving cash or a cash equivalent. Redeeming cash or its equivalent by paying an equal or greater amount of cash, and selling cash for more than its face value and receiving a surplus are "incredible" concepts. *Cross Electric Co., Inc. v. United States*, 664 F.2d 1218, 1221 (4th Cir.1981).

While redemption and surplus rights do not apply to cash or equivalents such as the accounts receivable and bank accounts involved herein; it is conceivable that a debtor could retain an equitable interest in such property if its value were greater than the value of the debt levied upon. Such an equitable interest exists, however, only where the property value exceeds the tax levy or such amounts are disputed, leaving the possibility of an excess. As there is neither an excess nor a dispute herein, no such equity interest is possible.

This Court concludes that in the present case involving accounts receivable, the rights of redemption and surplus have no application. The single equitable interest a debtor may retain in cash or cash equivalents exceeding a tax levy, does not arise under the present factual scenario. The IRS completed all tasks necessary to effectively complete the IRS levy. (PTS stipulated to the proper completion of all but § 6335 notice of seizure which does not

apply to cash or a cash equivalent.) The tax assessments ($87,870.56) for which levies were made far exceeded the receivables levied upon ($52,066.95). Furthermore, these amounts due PTS were undisputed by GSA and a GSA check drawn upon the United States Treasury is as good as cash. Thus upon the filing of PTS' petition there remained nothing more for the IRS to do to extinguish all of PTS' rights in the receivables. The ministerial action of receiving the amount withheld by the GSA is not considered by this Court to be a substantive element necessary to the completion of the levy. There was therefore no interest in the accounts which could become property of the estate under Code § 541(a)(1) and the Debtor may not recover property which is not part of its estate.

## II. *PTS v. DOL*

█ Using the *Whiting Pools* framework to focus the issues involved in the dispute between PTS and DOL, the threshold question is whether PTS' interest in property withheld pursuant to a DOL withholding letter was extinguished by such withholding. Although this Court found that the procedures implementing the IRS levy in this case extinguished all of PTS' rights and interests in the property involved, the withholding procedures accomplished by the DOL did not extinguish all of the Debtor's interests. The divergent holdings are attributable to this Court's finding that the IRS completed all procedures necessary for the levy and seizure of the receivables while the DOL did not.

The Service Contract Act found at 41 U.S.C. § 351 et seq. (hereinafter the "SCA") requires that certain provisions designed to protect employees (concerning minimum wages, fringe benefits, and health and safety) be included in all contracts (over $2,500) entered into by the United States. Among the provisions of the SCA, § 352 provides for withholding procedures to be followed when the statute is violated. This section allows the Federal Government to withhold payment due a contractor in an amount equal to any compensation found to be due under the SCA. Once such a finding has been made the proper amount is to be held in a deposit fund and paid to the underpaid employees by order of the Secretary of Labor (hereinafter the "Secretary").

The statutory provisions of § 352 were not complied with in this case. This Court finds three specific deficiencies in the withholding procedures used by the DOL: (1) no definitive amount was found to be due employees under the SCA, (2) the payment withheld was not deposited into a deposit fund as the statute requires, and (3) no order to pay the amount withheld to underpaid employees was ever issued by the Secretary. Due to these deficiencies the withholding process was not properly completed and thus PTS' interest in the receivables was not extinguished.

This Court finds that the amount due employees under the SCA was never definitively calculated. PTS disputes the $38,240.65 amount declared due under the SCA in the DOL's withholding letter. Mr. Sheilds, the DOL Wage and Hour Division Compliance Officer who investigated PTS, testified that only a preliminary computation was performed prior to the issuance of the withholding letter sent to the GSA. Mr. Sheilds also conceded that the documents concerning these computations which were sent to PTS differed from the documents contained in the DOL file. Mr. Sheilds further testified that no determination was made as to whether payroll checks which were returned unpaid due to insufficient funds were ever honored, thus the DOL lacked information potentially affecting the amount due. The Court concludes from this evidence that the $38,240.65 sum recited in the DOL's withholding letter is a preliminary calculation insufficient to determine the precise amount due as the SCA requires.

The two remaining elements necessary to a proper withholding under the SCA were not proven by the evidence submitted. Mr. Larry Golden, the GSA's Accounts Payable Branch Chief, testified that the procedure for withholding payment pursuant to the DOL's letter was simply non-payment to the contractor. The evidence contained no indication that the payment withheld in this case was kept in a deposit fund as the statute requires. Similarly, since no evi-

dence was introduced indicating that the Secretary ordered the compensation of underpaid employees from the payments withheld, this Court finds that no such order was issued.

Assuming arguendo that compliance with § 352 of the SCA would extinguish all interest a debtor may have in property withheld pursuant to that section, less than full compliance leaves a debtor's interest in its receivables in tact. The facts in this case reveal several points at which the statutory procedures for withholding payment pursuant to SCA violations were not followed. Consequently, even if the § 352 procedures could effectively terminate a debtor's interest in the property involved, no such termination occurred in this case. The DOL did not extinguish PTS' interest in the receivables and the DOL is therefore not entitled to such property.

### III.  *PTS v. DES*

The only issue presented to the Court involving PTS and the DES is that of setoff. As of October 3, 1986, PTS owed the State of Missouri DES over $8,510.61 for unpaid unemployment taxes and as of that date the State of Missouri, owed PTS $8,510.61 for janitorial services performed by PTS.

At issue in this case is the main requirement of the setoff provision under § 553(a): mutuality. Although it is not defined in the Code, "to be mutual the debts must be in the same right and between the same parties, standing in the same capacity". 4 *Collier on Bankruptcy*, 15th ed. ¶ 553.-04[2] (1986) at 553–18; *see also In re IML Freight, Inc.*, 14 B.C.D. 1366 (Bankr.D. Utah 1986). Colliers further explains that "two entities, even though related, may not aggregate their debts and claims for setoff purposes." 4 *Collier on Bankruptcy*, 15th ed. ¶ 553.04[2] (1986) at 553–19.

█■ This Court finds that mutuality existed between the parties in this case and further that setoff is an appropriate remedy based upon the facts. PTS owed the DES $8,510.61 for unpaid prepetition unem-

ployment taxes. This Court further finds that the debt for services performed by PTS in September, 1986,[5] was incurred by the DES and owed to PTS. Numerous facts combine to lead this Court to its conclusion.

The aforementioned debts were incurred pursuant to a contract between the DES and PTS. The State of Missouri distributed to PTS a Request For Proposal. PTS by its President, William Terrill, signed this Request form thereby making an offer to provide janitorial services to the DES and returned the Request form to the State of Missouri, Division of Purchasing, along with PTS' proposal. The State of Missouri accepted PTS' proposal on March 31, 1985 by signing the Request For Proposal through its agents in the Office of Administration Division of Purchasing. Contract Release forms were thereafter executed by DES agents instructing PTS to deliver such janitorial services to the DES and to bill the DES for those services. Thus, the Office of Administration, Division of Purchasing simply procured services for which the DES was thereafter obligated to pay. This Court therefore concludes that the aforementioned debts mutually flowed between PTS and the DES, were both incurred prepetition, and are therefore appropriate for setoff.

### IV.  *Summary*

This Court concludes that the IRS levy extinguished PTS' interest in the receivables held by the GSA and PTS is therefore not entitled to a turnover of those funds. The Court further finds that the DOL withholding procedures were insufficient to extinguish PTS' interest in the above receivables. But while PTS retains an interest superior to that of the DOL, the IRS extinguished all of PTS' rights to the receivables. Since the amount owed the IRS exceeds the amount of the receivables held by the GSA, there is nothing for the DOL to turnover to PTS. Having also found that the DES is entitled to a setoff, this Court holds that PTS is not entitled to the turnover of any property held by the DES. An

---

**5.** At the State Office Building (housing DES) located at 421 E. Dunklin Street in Jefferson     City.

Order consistent with this Memorandum Opinion will be issued simultaneously therewith.

## ORDER

In accordance with the Memorandum Opinion filed today, it is hereby

ORDERED that the relief sought in the Professional Technical Services, Inc. Complaint For Turnover is DENIED and

IT IS FURTHER ORDERED that the General Services Administration turnover to the Internal Revenue Service the sum of $52,066.95 withheld pursuant to Internal Revenue Service levies.

IT IS FURTHER ORDERED that the Division of Employment Security of the State of Missouri setoff the sum of $8,510.61 against monies due Professional Technical Services, Inc. from the Division of Employment Security of the State of Missouri.