**SPS TECHNOLOGIES, INC.**

v.

**BAKER MATERIAL HANDLING CORPORATION.**

Civ. A. No. 92–4976.

United States District Court, E.D. Pennsylvania.

March 29, 1993.

Natalie D. Ramsey, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for plaintiff.

John E. Iole, Jones, Day, Reavis & Pogue, Pittsburgh, PA, R. Matthew Martin,

Jones, Day, Reavis & Pogue, Atlanta, GA, for defendant.

### *MEMORANDUM*

DALZELL, District Judge.

SPS Technologies, Inc. ("SPS") filed this action against Baker Material Handling Corporation ("Baker") seeking to collect an $114,929.58 account receivable (the "Baker Receivable") that Baker owed to a third party, E.C. Campbell, Inc. ("ECC"). SPS, a secured creditor of ECC, levied on the account on October 11, 1991, but when ECC filed for Chapter 11 bankruptcy about three weeks later, Baker paid the receivable to ECC's estate instead of to SPS.

SPS alleges in its complaint that Baker's payment of the account receivable to ECC constituted both a breach of contract and a violation of the Virginia Commercial Code.[1] SPS also alleges that Baker aided and abetted a fraudulent conversion of the Baker Receivable because Baker's allegedly illegal payment to ECC made it possible for ECC to distribute a large portion of the receivable to persons and entities other than ECC's secured creditors.

Both SPS and Baker have filed motions for summary judgment. The pivotal issue these motions present is whether the receivable constituted property of ECC's bankruptcy estate. If the receivable was part of the estate, Baker was correct to pay it to ECC, but if it was not, Baker should have paid SPS. For the following reasons, we conclude that the receivable constituted part of ECC's estate. We will therefore grant Baker's motion and deny SPS's motion.

### I. BACKGROUND

The parties have stipulated to the facts necessary to decide this motion. *See* Stipulation of Facts, filed January 15, 1993. SPS sold goods to ECC on an open account in connection with a material handling sys-

---

1. The parties are in agreement that Virginia law applies because the security agreement explicitly provides that the laws of the Commonwealth of Virginia govern the security agreement and its construction. We agree that the choice of law provision is effectual.

The two sections of the Virginia Commercial Code on which SPS relies are §§ 8.9–502 and 8.9–318.

tem ECC was installing. As a result, ECC became indebted to SPS in the amount of $602,223.00. After ECC failed to make timely payments on this debt, SPS and ECC memorialized the debt on November 6, 1990 by executing a "Settlement Agreement" and a "Confessed Judgment, Commercial Note and Security Agreement". The security agreement gave SPS a security interest in all of ECC's assets, including the company's accounts receivable.

In September of 1991, SPS notified ECC that ECC had defaulted on its payment obligations under the security agreement. SPS, knowing that Baker owed ECC at least $114,929.58, levied on that account on October 11, 1991 by notifying Baker to direct all future payments on the account to SPS.

On October 30, 1991, ECC filed a bankruptcy petition under Chapter 11 of the United States Bankruptcy Code[2] with the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division.[3] On that same day, ECC's counsel wrote to Baker's Vice–President of Finance and Accounting to inform him both that ECC had filed for bankruptcy and that "an automatic stay was imposed ... against any and all creditors ... of [ECC] attempting to assert any rights or claims against [ECC's] receivables." Exhibit D to SPS's motion for summary judgment ("SPS's motion"). ECC's counsel instructed Baker to "immediately disburse all funds due and owing to [ECC]". *Id.* Baker responded on November 7, 1991 by wiring $114,929.58 to ECC.

SPS subsequently sent Baker two letters, dated February 19, 1992 and May 18, 1992, contending that "turnover of the payment to ECC without court order determining the relative rights of the parties violated SPS's perfected secured interest in the account payable to ECC", and demanding that Baker immediately pay the account receivable to SPS. February 19, 1992 letter, Exhibit E to SPS's motion. In spite of these communications, Baker has yet to pay any portion of the Baker Receivable to

SPS. By letter dated December 10, 1991, however, ECC's counsel forwarded SPS a check in the amount of $20,000.00 which ECC represented was part of the proceeds of the Baker Receivable.

## II. DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law, *id.* at 248, 106 S.Ct. at 2510, and all inferences must be drawn, and all doubts resolved, in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

In the instant case, the parties have stipulated to all the material facts that are relevant to our inquiry into whether Baker acted properly in disregarding SPS's levy on the Baker Receivable and returning the money to ECC's estate. To resolve this issue, we must look to federal bankruptcy law.

When a debtor files for Chapter 11 bankruptcy, section 542 of the Bankruptcy Code requires that custodians of "property of the [debtor's] estate" deliver that property to the estate. *See* 11 U.S.C. § 542(a). Section 541 of the Code defines property of the debtor's estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Generally, a debtor's legal or equitable interests are determined

---

**2.** 11 U.S.C. §§ 101–1330.

**3.** The bankruptcy case file number is 91–14718.

by the application of nonbankruptcy law. *See* 4 Collier on Bankruptcy § 541.02, at 541–10–10 (5th ed. 1988).

The Supreme Court addressed the question of whether a debtor has "legal or equitable interests" in property that a secured creditor has seized in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), and held that "the reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization." *Id.* at 209–10, 103 S.Ct. at 2315. The Supreme Court reached this conclusion after surveying the legislative history of sections 541 and 542, and determining that Congress intended the debtor's estate to be inclusive rather than exclusive in order to "facilitate the rehabilitation of the debtor's business." *Id.* at 204, 103 S.Ct. at 2313. The Court also remarked, however, that the turnover provision "may" not apply if a levy or seizure transfers "ownership" of the property to the creditor. *Id.* 462 U.S. at 210, 103 S.Ct. at 2316.

Several Bankruptcy Courts have tried to limit the *Whiting Pools* holding (that a debtor's estate includes the debtor's property that a creditor levied upon pre-petition) to cases involving tangible property. *See, e.g., Silverman v. Johnson Controls, Inc.*, 139 B.R. 765 (Bankr.E.D.N.Y.1992); *In re Brown*, 126 B.R. 767 (N.D.Ill.1991); *In re Professional Technical Services, Inc.*, 71 B.R. 946 (Bankr.E.D.Mo.1987). These courts contend that the *Whiting Pools* opinion did not contemplate levies on intangible property because it focused on debtors' ownership interests that are unique to tangible property[4] and was grounded in the policy consideration that tangible assets are less valuable when sold for scrap than when returned to debtors for ongoing business use. *See, e.g.*, 126 B.R. at 772.

Although the Supreme Court spent a portion of its opinion discussing issues exclusive to tangible property levies, we do not believe that it intended to limit the impact of its decision to cases involving tangible property. The reason that the Supreme Court granted certiorari in *United States v. Whiting Pools, Inc.*, 674 F.2d 144 (2d Cir.1982) (Friendly, J.) (*"Whiting Pools I"*), was to resolve a conflict between *Whiting Pools I*, which held that levied-upon tangible property was property of a debtor's estate, and a Fourth Circuit decision, *Cross Electric Co. v. United States*, 664 F.2d 1218 (4th Cir.1981), which held that levied-upon intangible property was not part of a debtor's estate. *See* 462 U.S. at 203, 103 S.Ct. at 2312.

If the Supreme Court believed, as some bankruptcy courts believe, that intangible property was subject to markedly different treatment than intangible property, it would not have found *Cross Electric* and *Whiting Pools I* to conflict and would not have granted certiorari in order to "resolve this conflict in an important area of the law under the new Bankruptcy Code". 462 U.S. at 202, 103 S.Ct. at 2312. As the Court of Appeals for the Eleventh Circuit noted in *In re Challenge Air Int'l, Inc.*, 952 F.2d 384 (11th Cir.1992):

> Had the Supreme Court intended to restrict its holding to situations involving tangible saleable property, it either would have not recognized a conflict between *Cross Electric* and *Whiting Pools I* and refused to grant certiorari, or it would have, at the very least, indicated that no conflict existed between the two decisions in view of the different types of property involved.

*Id.* at 386–7. We therefore believe that the *Whiting Pools* decision controls the outcome of both cases involving intangible property and those involving tangible property.

> First, the debtor has a right to redeem that property at any time prior to sale by paying the total debt owed. *Id.* Second, the debtor has the right to any surplus received upon the sale of the property. *Id.*

---

**4.** A levy on tangible property is not complete until the property is sold and reduced to cash. *See Whiting Pools*, 462 U.S. at 212, 103 S.Ct. at 2317. Until the property is sold, the debtor has two identifiable interests in that property. *See In re Professional Technical*, 71 B.R. at 949.

■ Nevertheless, we cannot ignore the Supreme Court's comment that the turnover provision "may" not apply if a levy transfers ownership of the levied-upon property to the creditor. We cannot assert that *Whiting Pools* requires all property seized pre-petition to be included in the property of the debtor's estate. Instead, we believe that *Whiting Pools* creates a presumption that all property levied upon pre-petition is included in the debtor's estate, and unless the creditor can show that the levy completely transferred ownership of the property to the creditor, leaving the debtor with no remaining interest, the property must be returned to the estate. We do not believe that such a transfer occurred here.

Whether a debtor who has filed for bankruptcy has "legal or equitable interests" in property is determined by state law. *See re Nejberger*, 934 F.2d 1300, 1302 (3d Cir. 1991). SPS and Baker agree that Virginia law applies to their controversy. Virginia has adopted both Article Nine and Article Two of the Uniform Commercial Code ("UCC").[5]

■ The Court of Appeals for the Ninth Circuit has greatly assisted our analysis with its opinion in *In re Contractors Equipment Supply Co.*, 861 F.2d 241 (9th Cir.1988), an opinion in which the court assessed a debtor's interest in a levied-upon account receivable under the UCC. As *In re Contractors Equipment* explains, an Article Nine transaction involving an account receivable can entail either a sale of an account or a grant of a security interest in an account. *Id.* at 245 (citing *Major's Furniture Mart, Inc. v. Castle Credit Corp.*, 602 F.2d 538, 542 (3d Cir. 1979)); *see also* UCC § 8.9–102(1). The type of transaction involved determines whether the debtor retains any interest in the subject account receivable when a creditor forecloses on it. 861 F.2d at 245. If the transaction involved a sale, which the UCC tells us entails a passage of title, *see* UCC § 8.2–106(1), the debtor is only entitled to any surplus or liable for any deficiency *if* the parties' agreement so provides. UCC § 8.9–502(2). If the transaction involved a security interest, however, the UCC states that the debtor is without exception entitled to any surplus and liable for any deficiency. *Id.* As the statute attests, the creditor's right to levy on the account is simply a "collection right"; it is not a right to transfer of ownership. UCC § 8.9–502. We are therefore compelled to conclude that a levy on an account in which the creditor holds a security interest does not entail the passage of title, in contrast to what occurs in a sale. *See* 861 F.2d at 245. In any case, the debtor's right to any surplus from the account receivable is an identifiable post-levy "legal or equitable interest" which brings the account into section 541's definition of "property of the estate".

Moreover, under the UCC, a debtor has the right to redeem its collateral "at any time before the secured party has disposed of collateral or entered into a contract for its disposition ... by tendering fulfillment of all its obligations secured by the collateral". UCC § 8.9–506. Because "collateral" includes accounts receivable, *see* UCC § 8.9–105, a debtor has a right to redeem its levied-upon accounts before the creditor collects on them. This right to redeem the accounts is also a "legal or equitable interest" rendering the accounts property of the estate under section 541 of the Bankruptcy Code.[6]

---

**5.** Va.Code Ann. §§ 8.9–101 to 8.9–507 (1992) correspond to UCC §§ 9–101 to 9–507. Va.Code Ann. §§ 8.2–101 to 8.2–725 (1992) correspond to UCC §§ 2–101 to 2–725.

**6.** SPS asserts that a debtor's right to redeem accounts receivable must terminate upon levy because a rule extending the right to redeem until the account debtor pays the account to the levying creditor would render the creditor a hostage to the account debtor. Although we understand SPS's concern, we find that, in the absence of evidence that the debtor and account debtor have improperly colluded to deprive the levying creditor of its rightful property, we cannot justify divesting debtors of their right to redeem property prior to disposition.

SPS does allege that Baker purposefully withheld payment to SPS because it was a supplier to one of ECC's contracts and hoped that paying ECC the Baker Receivable would enable ECC to complete that contract. SPS, however, has provided us with no support for this bald allegation

SPS argues that, on the facts of the instant case, ECC's right to redeem and right to surplus are insufficient to bring the Baker Receivable into ECC's estate. Specifically, SPS points out that there is no surplus in the instant case because ECC owes over $300,000 to SPS[7] and the account in dispute amounted to only $144,-949.58. Similarly, because the debt ECC owes to SPS is so much greater than the value of the Baker Receivable, SPS argues that it is unrealistic to contend that ECC would ever choose to redeem the account. Therefore, SPS maintains that ECC had no exercisable right to surplus or right to redeem.

This argument, however, is the same argument the Supreme Court rejected by overruling *Cross Electric* in *Whiting Pools*. In *Cross Electric*, the Court of Appeals for the Fourth Circuit noted that the debtor had "indicated no intention of redeeming" the levied-upon account, that "it would be incredible that [the debtor] would pay a tax of over $40,000 in order to redeem an account of approximately $5,500", and that there was no "possible likelihood of any surplus arising out of the sale or liquidation of the account levied upon". 664 F.2d at 1221. On this basis, the Fourth Circuit concluded that:

> [s]ince it is thus plain that the trustee is in no position to exercise any of the limited rights it may have to redeem the property levied upon there was no authority ... to 'dissolve' the ... levy or to order the delivery of the account levied upon ... to the trustee and the [creditor] is entitled to collect the account pursuant to its levy.

*Id.* Because we believe that the Supreme Court necessarily rejected this reasoning when it affirmed *Whiting Pools I*, we will not adopt *Cross Electric*'s reasoning here. Instead, we hold that ECC's right to redeem the Baker Receivable and its right to

any surplus in the receivable, even if they are rights that ECC could not, or would not, assert in the instant situation, are sufficient to render the account "property" of ECC's estate and subject to turnover under section 542 of the Bankruptcy Code.

We are comfortable with this decision because SPS remains entitled to adequate protection of its interest under § 363 of the Bankruptcy Code. *See* 11 U.S.C. § 363(e). Moreover, as *In re Challenge Air* noted, "[t]he *Whiting Pools* decision authorized turnover of the debtor's property held by the [secured creditor] to maximize the estate in order to facilitate the debtor's reorganization". 952 F.2d at 387. Our decision "simply requires [SPS] to seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor's efforts to reorganize." *Whiting Pools*, 462 U.S. at 212, 103 S.Ct. at 2317.

## III. CONCLUSION

We therefore find that although SPS had levied on the Baker Receivable before ECC filed for bankruptcy, the receivable was "property of the estate" and the Bankruptcy Code required Baker to pay the account to ECC. Under these circumstances, we cannot hold Baker liable either for improper payment or for aiding and abetting ECC's allegedly improper payment of the proceeds to unsecured creditor.

We will therefore grant Baker's motion for summary judgment and deny SPS's motion for summary judgment.

---

of intent. ECC, on the other hand, has submitted the deposition testimony of Hermann Kling, a corporate officer of Baker who, along with Baker's president, made the decision to pay the receivable to ECC. Kling testified that he made the decision to pay ECC on the advice of counsel and that the decision was in no way motivat-

ed by Baker's desire to sustain its contractual relationship with ECC. *See* Excerpt from Kling's deposition, Baker's Reply to SPS's Opposition to Baker's Motion for Summary Judgment at 11–12.

7. *See* Stipulation of Facts at ¶ 18.