**In re Don and Helen ABERCROMBIE, Debtors.**

**Bankruptcy No. 393–31991–SAF–13.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

July 2, 1993.

Clifford F. McMaster, Ft. Worth, TX, for debtors.

Ramona Stephens Notinger, Dept. of Justice, Tax Div., Dallas, TX, for U.S. (IRS).

### ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

The debtors, Don and Helen Abercrombie, have filed a motion to hold the Internal Revenue Service in contempt of court for exercising control over property of this bankruptcy estate in violation of the automatic stay imposed by 11 U.S.C. § 362. The court conducted a hearing on the motion on April 15, 1993. Enforcement of the automatic stay by contempt-type proceedings, 11 U.S.C. § 362(h) or Bankruptcy Rule 9020, or by turnover proceedings, 11 U.S.C. § 542, constitutes a core matter of which this court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b) and 1334.

On March 12, 1993, the IRS served notices of levy on Town North National Bank and North Dallas Bank and Trust against two bank accounts owned by the Abercrombies. At the time of service of the notices of levy, the debtors had on deposit approximately $14,000. Because of the notices of levy, the banks refused to pay checks drawn on the debtors' accounts.

On March 15, 1993, the Abercrombies filed a petition for relief under Chapter 13 of the Bankruptcy Code, and shortly thereafter filed this motion to hold the IRS in contempt for failing to release the levies after the entry of the order for relief. Don Abercrombie has written to the court explaining that he filed the motion for contempt because the IRS had allegedly reneged on an agreement for the Abercrombies to pay their IRS debt over time.

The IRS noticed its levy prior to the filing of the Chapter 13 petition. The receipt and application of the cash by the IRS post-petition does not constitute a sanctionable act because the IRS obtained ownership of the funds in the accounts pre-petition.

Section 541(a)(1) of the Bankruptcy Code provides:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

The sanctions analysis turns on whether the cash in the bank accounts was property of the estate at the commencement of the case. Non-bankruptcy law, here the Internal Revenue Code, determines whether the debtor had an interest in the property at the commencement of the case. *See In re Brown,* 126 B.R. 767 (Bankr.N.D.Ill.1991).

Most courts have dealt with this issue in the context of a turnover action. Those courts have split on the issue of whether cash or cash equivalents are subject to turnover when the IRS levies against them pre-petition. In *United States v. Whiting*

*Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court *citing Cross Electric Co., Inc. v. U.S.*, 664 F.2d 1218 (4th Cir.1981), an accounts receivable case, recognized the split. *Whiting Pools* involved tangible personal property. The Court concluded that the tangible property should be returned to the debtor because the debtor's interest in the property had not been extinguished pre-petition by the levy. The Court noted that IRS regulations provide for seizure and sale of tangible property, but that ownership of the property does not transfer from the debtor until the property is sold. The Court concluded, therefore, that the debtor retained an interest in the property to warrant turnover. *Whiting Pools*, 462 U.S. at 211, 103 S.Ct. at 2316. The Court recognized that the IRS's retention of the seized property could prevent the debtor in the Chapter 11 case from reorganizing.

Since the decision in *Whiting Pools*, courts have struggled with its breadth. Factually, *Whiting Pools* resolved that tangible property seized but not sold by the IRS pre-petition should be turned over to the Chapter 11 estate subject to adequate protection provided by the debtor. Some courts have relied on the Supreme Court's reference to *Cross*, a case involving accounts receivable, to reason that the Court intended to go beyond tangible property to include intangible property, like cash and cash equivalents. *See, e.g., In re Metro Press, Inc.*, 139 B.R. 763 (D.Mass.1992); *SPS Technologies, Inc. v. Baker Material Handling Corp.*, 153 B.R. 148 (E.D.Pa. 1993). Other courts have reasoned that cash and cash equivalents cannot be subject to turnover because the pre-petition levy divests the debtor of all interest in the property upon the service of the levy notice. *See, e.g., In re Rose*, 112 B.R. 12 (Bankr.E.D.Tex.1989); *In re Professional Technical Services*, 71 B.R. 946 (Bankr. E.D.Mo.1987). For the reasons cited below, this court finds the latter cases persuasive.

When the IRS levies on saleable property, the debtor retains two identifiable and significant interests in the property. The Internal Revenue Code provides that the person whose property has been levied upon has the right to redeem the property prior to (or, in the case of real property, within 180 days after) an IRS sale. *See* 26 U.S.C. § 6337. The former property owner also has a right to any surplus from the sale. *See* 26 U.S.C. § 6342(b). These interests are safeguarded by procedures established by the Internal Revenue Code for notifying owners of the seizure and of the sale. *See* 26 U.S.C. § 6335. These property interests become property of the bankruptcy estate under § 541 when only the levy occurred pre-petition.

> However, when the IRS levies upon a nonsaleable asset (i.e., cash or a cash equivalent), the debtor does not retain any of the substantive property interests which the notice and sale procedures of § 6335 are designed to protect. Cash and cash equivalents cannot meaningfully be "redeemed" ... or "sold."

*Brown*, 126 B.R. at 771. *See also Professional Technical Services*, 71 B.R. at 950.

The court in *Brown* noted that accounts receivable should not be considered "cash equivalent" for the purposes of this analysis because accounts receivable can be sold by the IRS at face value or at a discount, just like tangible property. *Brown*, 126 B.R. at 771, n. 9. For accounts receivable, the debtor could retain a property interest because the accounts receivable would be redeemable and the debtor would be entitled to any surplus funds after the sale. *Cross*, the case cited by the Supreme Court in *Whiting Pools* to illustrate the "split" among the circuits, involved accounts receivable. Therefore, the Court's analysis in *Whiting Pools*, while arguably broad enough to include accounts receivable, does not address cash equivalents.

Furthermore, the Supreme Court stated that its reasoning in *Whiting Pools* did not necessarily encompass every tax levy. The Court recognized that there may be situations in which the levy would pass ownership of the property. "Of course, if a tax levy or seizure transfers to the IRS ownership of the property, [Bankruptcy Code]

§ 542(a) may not apply." *Whiting Pools,* 462 U.S. at 209, 103 S.Ct. at 2316.

Because the pre-petition levy on the debtors' cash or cash equivalent deposits divested the debtors of any interest in that property, the debtors brought no property interest in the $14,000 into this bankruptcy estate under § 541. The IRS did not, therefore, exercise control over property of the estate in violation of the automatic stay.

The court must observe, however, that the proof of claim filed by the IRS did not reflect transfer of the $14,000 to the IRS. On April 14, 1993, the IRS filed a proof of claim for a total sum of $20,520.14. The IRS filed the proof of claim a month after service of the notices of levy on the banks and almost three weeks after the debtors' motion for contempt had been filed. Since the notices of levy divested the debtors of any interest in the $14,000, the IRS, as owner of the $14,000, should have reflected that the claim had been reduced by the $14,000, subject to actual transfer by the banks. Silence in the proof of claim is inconsistent with ownership of the $14,000 by the IRS. The bar date for filing a proof of claim will not run until 90 days after May 27, 1993, the first date scheduled for the meeting of creditors. *See* Bankruptcy Rule 3002(c). The IRS could have waited until the motion for contempt was resolved, or at the very least it could have stated on the proof of claim that it intended to amend the proof of claim when it physically received the levied funds. By the time it filed its proof of claim, the IRS had had a month in which to determine how to proceed. In fact, the motion for contempt had been filed almost three weeks before, and the IRS filed a response to the motion for contempt on the same day the proof of claim was filed. By that date the IRS had concluded that it owned the funds in the accounts, yet it filed a proof of claim for the full debt without crediting or noting the levy. The IRS has requested a continued evidentiary hearing to present evidence that would explain its administrative process. Because the court can resolve this contempt motion without that explanation, it will not conduct a further hearing. The IRS's records for the Abercrombies must have noted the notices of levy, therefore, the proof of claim should have reflected them even if the administration process had not been completed.

Even if *Whiting Pools* sweeps broadly enough to find a property interest in the bank deposits to support a turnover, the Abercrombies would not be entitled to a contempt sanction against the IRS. The IRS can produce the $14,000. So the court would apply or require a turnover analysis. The Abercrombies would have to provide the IRS with adequate protection for the $14,000. On this record, that could only be done by having the Chapter 13 Trustee hold the cash with a lump sum or periodic distributions to the IRS depending on the debtors' Chapter 13 plan payments. Under that arrangement the debtors would be paying a $20,520.14 obligation plus interest instead of a $6,520.14 obligation plus interest without the use of the $14,000 until the IRS debt had been correspondingly reduced. The debtors have offered no other property or means of adequate protection. The turnover would be a pointless exercise, which may even be harmful to the debtors. The court would not order a turnover under these circumstances.

The court recognizes the debtors' frustration in dealing with the IRS and their anger over the IRS's alleged failure to uphold the agreement. Mr. Abercrombie has told the court that his counsel advised an earlier Chapter 13 petition to pre-empt an IRS levy, but that he believed he should continue to pay the IRS under the alleged agreement. The court has no reason or basis to delve into this alleged agreement and alleged breach by the IRS. The debtors' complaints, excessive and inappropriate hyperbole aside, about the power given the IRS by the Internal Revenue Code to collect delinquent taxes should be addressed to Congress, not this court.

Accordingly,

**IT IS ORDERED** that the debtors' motion for contempt against the IRS is **DENIED.**