In re Louis **MONTGOMERY, Jr.,** and Carol E. **Montgomery, Debtors.**

**Bankruptcy No. S–83–00570–5.**

United States Bankruptcy Court, E.D. North Carolina.

April 25, 1983.

Robert A. Ponton, Jr., Raleigh, N.C., for IBM.

S. Allen Patterson, Raleigh, N.C., for debtor.

Trawick H. Stubbs, Jr., New Bern, N.C., for trustee.

A. THOMAS SMALL, Bankruptcy Judge.

This cause is before the Court upon the application of the Debtors seeking a turnover order for an automobile that was repossessed prior to the filing of their chapter 13 petition.

## FACTS

These relevant facts are not disputed.

The Debtors are the owners of a 1981 Toyota SR–5 automobile which is subject to a security interest held by IBM Coastal Employees Federal Credit Union ("IBM"). The indebtedness secured by the automobile required monthly payments of $224.85 and has an outstanding balance of $6,085.90. The last monthly payment made by the Debtors was on November 1, 1982.

On March 23, 1983, when the indebtedness was four payments in arrears, IBM repossessed the automobile; the automobile is still in its possession. IBM's repossession and storage fees are approximately $407.00.

The Debtors filed a petition under 11 U.S.C. chapter 13 on March 28, 1983 and on April 1, 1983 filed an application seeking an order directing that the automobile be returned.

Both Debtors are employed and the automobile is needed by them to travel to their jobs.

## DISCUSSION AND CONCLUSIONS

IBM argues that the turnover application should be denied for two reasons. First, the turnover should be denied because the Debtors acted inequitably in not making or renegotiating the four delinquent monthly payments. Failure to make payments by itself is simply not a basis for denying bankruptcy relief.

The second contention is more difficult. Relying on *Cross Electric Company, Inc. v. United States,* 664 F.2d 1218 (4th Cir.1981), IBM argues that the repossessed automobile is no longer property of the estate and therefore not the proper subject of a turnover order.

In *Cross Electric* a chapter 11 debtor sought a turnover of a $5,672.65 account receivable which was the object of a prebankruptcy levy by the Internal Revenue Service. The Fourth Circuit Court of Appeals in *Cross Electric* held that under the

facts of that case the account receivable was not property of the estate and that turnover was not authorized.

In *Cross Electric* the debtor had the right to redeem the account receivable by paying the entire tax plus costs (26 U.S.C. § 6337). The Court noted that the debtor in possession had neither the intention nor the ability to redeem. In fact, the Court observed that it would be "incredible" to expect the payment of over $40,000.00 in taxes to redeem a $5,500.00 account.

The facts are entirely different in the case before this Court. Unlike the debtor in *Cross Electric,* the Debtors have both the desire and the ability to redeem the collateral. They also have the ability to provide adequate protection for IBM's rights.

The Debtors' rights to redeem their automobile are set forth in N.C.G.S. § 25–9–506 which provides:

At any time before the secured party has disposed of collateral or entered into a contract for its disposition under G.S. 25–9–504 or before the obligation has been discharged under G.S. 25–9–505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses. (1965, c. 700, s. 1; 1975, c. 862, s. 7.)

Redemption may be accomplished under N.C.G.S. § 25–9–506 "at any time before the secured party has disposed of the collateral . . . ." As long as the secured creditor's rights with respect to the collateral are being adequately protected the automatic stay of 11 U.S.C. § 362(a) will prohibit the secured creditor from "disposing" of the collateral and thus extend the time for the Debtors' redemption rights. The Debtors propose to pay the entire redemption amount through their chapter 13 plan.

But what of the secured creditor's right to possession upon default? North Carolina General Statute § 25–9–503 says that "Unless otherwise agreed a secured party has on default the right to take possession of the collateral." IBM is entitled to have its right to possession protected, but that right may be postponed by 11 U.S.C. § 542 just as the secured creditor's right to dispose of the collateral after default (N.C.G.S. § 25–9–504) is postponed by 11 U.S.C. § 362(a).

Should it become apparent that the Debtors lack the intention or ability to redeem the collateral pursuant to N.C.G.S. § 25–9–506 or should the IBM collateral cease to be adequately protected, IBM may apply to this Court for an order directing the return of its collateral.

An order shall be entered directing the turnover of the automobile by IBM to the Debtors on the following conditions:

1. The Debtors shall pay to IBM prior to delivery of the automobile one payment of $224.84.

2. On the first day of each month thereafter, the Debtors shall pay IBM at least $224.84.

3. The automobile shall at all times be insured as required by IBM's security agreement.

4. The Debtors shall propose and complete a confirmable chapter 13 plan which provides for the payment to IBM of the redemption amount required by N.C.G.S. § 25–9–506.

The order shall further provide that failure to comply with any of the conditions of the order shall constitute grounds for the return of the automobile to IBM.