**David G. DiFLORIO and Daniel G. Driscoll, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 82–CV–1347.

United States District Court, N.D. New York.

June 2, 1983.

Menter, Rudin & Trivelpiece, P.C., Syracuse, N.Y., for plaintiffs; David W. Pelland, Jeffrey Zalkin, Syracuse, N.Y., of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., for defendant; Louis J. Lombardo, Trial Atty., Tax Div., Washington, D.C., John J. McCann, Asst. U.S. Atty., Syracuse, N.Y., of counsel.

MEMORANDUM–DECISION & ORDER

McCURN, District Judge.

This matter is before the Court on the defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the defendant's motion is granted.

This action is a complaint for wrongful levy, filed pursuant to 26 U.S.C. § 7426(a)(1). On March 15, 1978 Murphy and Wilbur Realty, Inc., now known as Kupperman and Wood, Inc. [Kupperman], executed a promissory note, a security agreement and mortgage agreement running in plaintiffs' favor. On March 16 and 27, 1978, plaintiffs perfected their security interest in "all assets including but not limited to Accounts Receivable, fixtures, equipment, contract and contract rights" of Kupperman by filing UCC–1 Financing Statements in the Offices of the Onondaga County Clerk and the New York State Secretary of State. The amount of Kupperman's indebtedness to plaintiffs is approximately $280,000.00.

On April 20, 1980, an assessment was made against Kupperman for unpaid feder-

al unemployment and social security taxes. On April 21, 1980, the Internal Revenue Service [IRS] filed a notice of lien with the New York Secretary of State and with the Onondaga County Clerk's Office. That same day, the IRS served a notice of levy upon Chemical Bank respecting any property in its possession belonging to Kupperman. The amount of the levy was $22,-584.20. At that time, Kupperman had an open checking account with Chemical Bank in which $11,810.71 was on deposit. By letter dated April 28, 1980, attorneys for the Bank of New York demanded return of the monies by the IRS, asserting that the Bank of New York had a perfected security interest in that account.[1]

An involuntary petition in bankruptcy was filed against Kupperman on May 1, 1980; the Bankruptcy Court issued an order granting that relief on June 3, 1980. On June 22, 1981, Chemical Bank issued its check to the IRS in the amount of $11,-780.71 in satisfaction of the notice of levy. The Bankruptcy Court entered an order of abandonment relative to the Chemical Bank Account on November 16, 1982. Thereafter, on November 30, 1982, plaintiffs filed suit in this Court demanding return of the levied proceeds of the Chemical Bank account; no previous demand for the return of these monies was presented to the IRS by plaintiffs. This summary judgment motion follows.

*Discussion*

Plaintiffs bring this action pursuant to 26 U.S.C. § 7426 which provides, in relevant part,:

(1) *Wrongful levy.* If a levy has been made on property . . . any person (other than the person against whom is assessed the tax out of which the levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action

against the United States in a District Court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

*Id.* 26 U.S.C. § 6532(c) mandates that any such action must be commenced within nine months following the levy, unless a demand for the return of the property has been made upon the Secretary. When such a demand has been made, the limitations period is extended to the shorter of twelve months from the date the demand was filed or six months from the date of mailing of the Secretary's disallowance of the demand. These plaintiffs did not commence this action within nine months of the date of levy or within twelve months of the date of the demand filed by the Bank of New York.[2] The question then becomes whether the time limitations set forth in section 6532(c) were tolled by the automatic stay provision of the Bankruptcy Act once the Bankruptcy Court's jurisdiction was invoked by the filing of the petition in bankruptcy against Kupperman. *See* 11 U.S.C. § 362(a).

The automatic stay provision of the Bankruptcy Act stays all entities from performing any act to obtain possession of the property of the estate or to enforce a lien against property of the debtor or the estate. 11 U.S.C. § 362(a)(3), (4), (5). Therefore, in order for the limitation period of 26 U.S.C. § 6532 to be tolled, the monies in Kupperman's Chemical Bank account must have been the property of the debtor Kupperman at the time the involuntary petition in bankruptcy was filed against it.

Property is defined in the Bankruptcy Act as including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Plaintiffs assert that the proceeds of Kupperman's Chemical Bank account became the property of the estate

---

**1.** At the time this demand was presented to the IRS, the monies were still in the physical possession of Chemical Bank. However, by filing its notice of levy, the government had legally "seized" the monies. See *Phelps v. United States,* 421 U.S. 330, 337 [95 S.Ct. 1728, 1732,

44 L.Ed.2d 201] (1975). The Bank of New York is not a party to this action.

**2.** This Court need not thus decide whether the filing of the demand by the Bank of New York extended the limitations period for the plaintiffs.

at the commencement of the Bankruptcy case. To the contrary, the government contends that once the notice of levy was served, the debtor lost all interest, both legal and equitable, in the bank account. Acknowledging the merit of each party's argument, this Court determines that Kupperman had no interest in the Chemical Bank account after it was levied upon by the government.

The Second Circuit Court of Appeals has recently considered this issue in a similar, yet to this Court, distinguishable case. *United States v. Whiting Pools, Inc.,* 674 F.2d 144 (2d Cir.), *cert. granted,* —— U.S. ——, 103 S.Ct. 442, 74 L.Ed.2d 599 (1982). The question presented in that case was "whether a debtor in possession under Chapter 11 of the Bankruptcy Code of 1978 is entitled to an order, under §§ 542 or 543 of the Code, requiring the Internal Revenue Service ... to turn over tangible assets of the debtor on which the IRS had levied ..." 674 F.2d at 145. Conceding the question to be a close one, the Second Circuit answered in the affirmative.

In *Whiting Pools,* the IRS levied upon the defendant's tangible property for unpaid withholding and social security taxes, totalling $92,000. The value of the seized property, in the hands of the defendant as a going concern, was estimated to be approximately $162,876. The proof was that the government could be expected to realize $20,000 to $35,000 upon a sale of the property. 674 F.2d at 146. The day following the levy, the debtor-defendant filed a Chapter 11 petition seeking reorganization and the defendant was continued as debtor in possession. Thereafter, the government sought a Court determination that the automatic stay provision of the Act was inapplicable or, in the alternative, that it be given relief from the stay. The Bankruptcy Judge determined that the stay provision was applicable and denied the government relief therefrom, and further directed the government to turn over the seized property to the estate. That determination was reversed by the District Court on appeal, 15 B.R. 270 (W.D.N.Y.1981), and affirmed in part by the Second Circuit Court of Appeals

and remanded to the Bankruptcy Court for determination as to whether a turn over was appropriate in light of the present circumstances. 476 F.2d at 160.

In reversing the decision of the District Court, the Court of Appeals determined that the pre-petition IRS levy did not display the debtor's interest in the property seized. The Court first distinguished *Phelps v. United States,* 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1875). In *Phelps,* the government had levied upon cash proceeds of the taxpayer which had been assigned to a third party assignee and held for the benefit of creditors. The amount of the levy greatly exceeded the cash proceeds held by the assignee. Thereafter, an involuntary petition in bankruptcy was filed against the taxpayer and the receiver petitioned the Bankruptcy Court to order the assignee to turn over the levied funds. The question before the Supreme Court was whether the levied funds were subject to the Bankruptcy Court's summary jurisdiction. The Supreme Court held they were not.

The Second Circuit Court of Appeals found the *Phelps* case inapposite for several reasons, not the least important of which was that the 1978 Bankruptcy Act abolished the distinction between summary and plenary jurisdiction. *See* 674 F.2d at 157. In addition, the Court of Appeals laid great emphasis on the fact that in *Phelps* the IRS had levied upon intangible property and that the amount of the levy exceeded the value of the property levied upon, exactly the situation presented in the instant case.

In *Whiting Pools,* the government argued that the IRS levy, as distinguished from a levy made by a non-governmental secured creditor, displaced the debtor's ownership in the levied property, notwithstanding that the amount of the levy was less than the value of the levied property. The government focused on two arguments in support of its position. First, it asserted that the applicable provisions of the Tax Code supported its argument. The Court, however,

found scant support for this position. 476 F.2d at 157. The Court noted that

> [n]othing in these sections [of the IRS Code] prohibits the delinquent party, after the levy and pending the sale, from exercising the most fundamental right of ownership, namely, to transfer title, subject, of course, to the continuing right of the United States to proceed with the sale unless the property has been redeemed under § 6337(a).

The Court continued to state that "[t]he title was 'forfeited' by the levy only in the sense that 'it became subject to being vested in the United States, and upon public sale, became actually vested in the United States ... but not before such public sale.'" 476 F.2d at 158.

The government also relied on two statements from the Supreme Court's opinion in *Phelps* in support of its position. First, it urged the following language from *Phelps* as dispositive: "[t]he levy, therefore, gave the United States *full legal right* to the $38,000 levied upon as against the claim of the petitioner receiver." 421 U.S. at 337, 95 S.Ct. at 1732 (emphasis added). The Court of Appeals found this language inapplicable to the case before it because in *Whiting Pools* the debtor had an *equitable* interest in the seized property as the amount of the levy was less than the value of the property seized. 674 F.2d at 158. Second, the government cited footnote 8 in the *Phelp's* opinion which stated in part that "[i]n any event, the pre-petition levy displaced any title of Chicagoland and [the taxpayer] ...." 421 U.S. at 337, 95 S.Ct. at 1733 n. 8; 674 F.2d at 158. The Court of Appeals noted that the Supreme Court failed to cite authority for that proposition and suggested an inconsistency with the earlier Supreme Court case of *Bennett v. Hunter,* 76 U.S. (9 Wall) 326, 19 L.Ed. 672 (1870) (holding that pre-sale activities were preliminary, and did not transfer title). The Court continued: "[t]he remark just quoted must be read as addressed to the particular circumstances of the *Phelps* case, where the tax claim vastly exceeded the amount of the levy and the seizure was of cash which did not need to be sold." 476 F.2d at 158.

Thus the Court held that the Bankruptcy Court had the power to order the government to turn over the seized property to the estate.

While at first glance it may appear that *Whiting Pools* is dispositive of the present motion, it is the opinion of this Court, upon much reflection, that *Phelps v. United States* is determinative. Accordingly, the government's motion for summary judgment is granted.

Here we have a striking factual similarity to *Phelps*. Both cases involved tax levies which exceeded the amount of the property seized. Both involved the seizure of cash proceeds which, needless to say, need not be sold to effectuate the transfer of ownership. Therefore, the main bases upon which the Second Circuit Court of Appeals distinguished *Phelps* are not present in the case at bar. While this Court does not agree with the defendant's statement that the *Whiting Pools* Court intimated that it would have decided the case differently had the debtor been involved in a straight bankruptcy proceeding as distinguished from a reorganization proceeding, nevertheless it is determined that the *Whiting Pools* case stands for the limited proposition that a debtor's interest in tangible property is not extinguished by a pre-petition governmental levy which is in an amount less than the value of the property seized. *See* 674 F.2d at 159. As the case at bar does not fall within that category, this Court finds *Phelps* controlling and holds that the pre-petition levy by the government displaced the taxpayer's interest in the seized bank account. *See Phelps v. United States,* 421 U.S. at 336–337, 95 S.Ct. at 1732–1733. *Accord Cross Electric Co., Inc. v. United States,* 664 F.2d 1218 (4th Cir.1981); *In re Ford,* 24 B.R. 616 (Bkrtcy.D.S.C.1982); *In re Cyber Electric Co.,* 18 B.R. 921 (Bkrtcy.E.D. Mich.1982); *In re Reese,* 14 B.R. 113 (Bkrtcy.W.D.N.Y.1981); *contra In re Sunrise Equipment and Development Corp.,* 24 B.R. 26 (Bkrtcy.D.Ariz.1982); *In re Health America,* 22 B.R. 268 (Bkrtcy.M.D.Fla.1982); *In re Bristol Convalescent Home, Inc.,* 12 B.R. 448 (Bkrtcy.D.Conn.1981).

The government's motion for summary judgment is granted; the complaint is dismissed.

IT IS SO ORDERED.