**In re Larry L. EISENBARGER, Debtor.**

**Bankruptcy No. 93–11055–AT.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Aug. 9, 1993.

Russell W. Craig, Sp. Asst. U.S. Atty., Alexandria, VA, for U.S.

Richard Hall, Annandale, VA, for debtor.

Gerald M. O'Donnell, Alexandria, VA, Chapter 13 trustee.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This case comes before the court on motion by the Internal Revenue Service ("IRS") to determine whether the IRS' post petition receipt of debtor's business earnings, pursuant to a prepetition notice of levy, was property of the bankruptcy estate under 11 U.S.C. § 541 and therefore in violation of the turnover provisions of 11 U.S.C. § 542.

Hearing was held on the IRS' motion on June 2, 1993, and the court took the matter under advisement. For the reasons given in this memorandum opinion, the court concludes that the funds received by the IRS pursuant to its notice of levy are not property of the bankruptcy estate and therefore are not subject to turnover under § 542.

### Facts

The facts are not disputed by the parties.

As of March 15, 1993, the debtor, Larry L. Eisenbarger, owed the Internal Revenue Service a total of $39,746.58 in unpaid income taxes. On February 22, 1993, the IRS served a notice of levy upon Cardio Concepts, Inc., for all property and rights to property held by Cardio Concepts on behalf of the debtor. Cardio Concepts received and had notice of the levy as of March 2, 1993.

The funds levied upon were commissions earned by the debtor for the periods ending January 25, 1993, and February 25, 1993.

On March 11, 1993, the debtor filed a bankruptcy petition under Chapter 13. Subsequently, on March 18, 1993, Cardio Concepts forwarded to the IRS a check dated March 18, 1993, in response to the levy. The check, made out in the amount of $5,491.25, represented commissions earned by the debtor during January 1993. Cardio Concepts remitted a second payment of $6,800.00 to the IRS in April 1993 constituting the debtor's commissions for February. The debtor does not contest the IRS' right to the first payment. Only the second payment is in dispute.[1] By agreement of the parties, the funds at issue were deposited in an interest bearing escrow account established by the debtor's counsel pending the court's ruling.

### Position of the Parties

IRS.

The IRS asserts the Fourth Circuit's opinion in *Cross Electric Co. v. United States*, 664 F.2d 1218 (4th Cir.1981), controls this case. *Cross Electric* essentially held that a prepetition levy on intangible property by the IRS extinguishes a debtor's rights of redemption and surplus in the levied property, and excludes that property from the debtor's bankruptcy estate.

DEBTOR.

Debtor's sole argument is that *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1982), effectively overruled *Cross Electric*. In *Whiting Pools* the Court held that tangible saleable property seized by the IRS prepetition was property of the bankruptcy estate.

### Discussion and Conclusions of Law

EFFECT OF IRS LEVY PROCEDURE.

Before determining whether the disputed funds are property of the bankruptcy estate, and therefore subject to turnover, the court

---

1. It is unclear why the debtor has conceded the first payment. It would seem consistent with debtor's argument that *both* checks constitute property of the estate since both were issued after his bankruptcy petition. As a practical matter it makes no difference, since the reasoning of the court with regard to the second contested check applies equally to the first.

must address the issue of when levies on cash or cash equivalents are legally complete. If the IRS' levy procedures were not completed prepetition the court's inquiry need go no further.

Courts have differed on the question, some holding that notice of levy alone is enough to transfer the debtor's interests in property,[2] while others have held that something more is required.[3]

Support for the position that service of the notice of levy is insufficient has generally been found in the language of the Internal Revenue Code procedures themselves. Internal Revenue Code § 6335 directs that, after seizure of property, notice of seizure and notice of sale must be served upon the owner or holder of rights before a valid sale can take place. 26 U.S.C. § 6335. Section 6502(b) provides that notices of seizure shall be given on the same day as any levies. 26 U.S.C. § 6502(b).

*Dunne Trucking Co. v. IRS (In re Dunne Trucking Co.)*, 32 B.R. 182, 185 (Bankr. N.D.Iowa 1983), involved an IRS levy on a debtor-corporation's bank account, in satisfaction of unpaid employment taxes. Notice of levy was served one day prior to the corporation's petition for chapter 11 bankruptcy. The court in *In re Dunne Trucking Co.*, although it acknowledged that sale is not possible when the property is cash or a cash equivalent, stated that "notice of seizure still appears to be a limitation on the Service's levy authority under § 6331(a). This is because a levy is not considered complete unless a notice of seizure is sent to the owner or holder of rights to property levied upon." *In re Dunne Trucking Co.*, 32 B.R. at 188 (citing I.R.C. § 6502(b)). Since the debtor's account in cash had not been physically seized prior to the bankruptcy petition, and

therefore a notice of seizure could not have been sent, the court held that the IRS levy was incomplete. Hence, the debtor's property rights were preserved and turnover was ordered. *In re Dunne Trucking Co.*, 32 B.R. at 188.

The analysis of *Dunne Trucking*, however, fails to consider the distinction between tangible and intangible property. Intangibles, such as bank accounts or accounts receivable, cannot be "seized" in the same manner as tangible property. "The IRS cannot forcibly take possession of an intangible asset. . . . Rather, possession may only be obtained when the party in possession knowingly relinquishes it (e.g., when the bank transfers funds from an account to the IRS)." *Brown v. Evanston Bank (In re Brown )*, 126 B.R. 767, 774 (N.D.Ill.1991). The party surrendering intangible property, of course, always has actual notice when the property is transferred. It follows, then, that the Internal Revenue Code provisions calling for notices of seizure have "no practical significance" when levy is made on intangible property. *In re Brown*, 126 B.R. at 775. The Supreme Court said as much in *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977):

Levy upon tangible property is normally effected by service of forms of levy or notice of levy and physical seizure of the property. Where that is not feasible, the property is posted or tagged. Because intangible property is not susceptible of physical seizure, posting, or tagging, levy upon it is effected by serving the appropriate form upon the party holding the property or rights to property. See Treas.Reg. § 301.6331–1(a)(a), 26 C.F.R. § 301.6331–1(a)(1) (1976).[4]

2. See *McLaughlin v. IRS (In re McLaughlin )*, 139 B.R. 9, 11 (N.D.Ohio 1991); *Brown v. Evanston Bank (In re Brown )*, 126 B.R. 767, 774–75 (N.D.Ill.1991); *DiFlorio v. United States*, 30 B.R. 815, 816 (N.D.N.Y.1983); *Silverman v. Johnson Controls, Inc. (In re Sigmund London, Inc.)*, 139 B.R. 765, 771–72 (Bankr.E.D.N.Y.1992); *Imperial Gardens Liquidating Trust v. Northwest Commons, Inc. (In re Northwest Commons, Inc.)*, 136 B.R. 215, 219 n. 4 (Bankr.E.D.Mo.1991); *Professional Technical Servs., Inc. v. IRS (In re Professional Technical Servs., Inc.)*, 71 B.R. 946, 950–51 (Bankr.E.D.Mo.1987).

3. See *In re AIC Indus., Inc.*, 83 B.R. 774, 777 (Bankr.Colo.1988); *Rouse v. United States (In re Suppliers, Inc.)*, 41 B.R. 520, 522–23 (Bankr. E.D.Ky.1984); *Davis v. IRS (In re Davis )*, 35 B.R. 795, 797–98 (Bankr.W.D.Wa.1983); *Dunne Trucking Co. v. IRS (In re Dunne Trucking Co.)*, 32 B.R. 182, 187–88 (Bankr.N.D.Iowa 1983).

4. Treasury Regulation Section 301.6331–1(a)(1) states:

Levy may be made by serving a notice of levy on any person in possession of, or obligated

*G.M. Leasing,* 429 U.S. at 350, 97 S.Ct. at 627. Citing *G.M. Leasing,* the Ninth Circuit reached a similar conclusion in *United States v. Donahue Indus., Inc.,* 905 F.2d 1325, 1330 (9th Cir.1990).

■ In short, notice of levy on intangibles is tantamount to actual physical seizure of tangible property. Therefore, once notice of levy has been served on cash or a cash equivalent, nothing more is required to transfer ownership to the government, and the taxpayer's interest in the levied property will have been extinguished.[5]

■ In the present case, the debtor's commissions for the February period became the Service's from the moment that Cardio Concepts received the IRS notice of levy. That day was March 2, 1993, nine days prior to the commencement of the debtor's bankruptcy case.

TURNOVER ISSUE.

Having determined that the IRS levy procedure was completed as to debtor's February commissions prepetition, the court's inquiry turns to whether the turnover provisions of the Bankruptcy Code require the IRS to release these commissions to debtor's bankruptcy estate.

From the time a debtor files a petition in bankruptcy, an estate is created "comprised of all of the following property, wherever located and by whomever held: ... [including] all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70a of the Bankruptcy Act." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 89 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6323.

Section 542(a) of the Bankruptcy Code, in conjunction with § 541, requires all entities, other than custodians, "in possession, custody or control, during the case, of property that the trustee may use, sell, or lease under section 363" to deliver that property to the trustee. 11 U.S.C. § 542(a). The same holds true of debts that are property of the estate and which are matured, payable on demand, or payable on order. 11 U.S.C. § 542(b). Thus, if property is deemed "property of the estate" under § 541, it must be turned over to the bankruptcy estate under § 542.

The question thus becomes whether debtor retained any right or interest in his February commissions after the prepetition IRS levy. If so, the money must be turned over to debtor's trustee as property of the estate. However, if the IRS levy terminated all of the debtor's rights to the funds, then the IRS is under no obligation to release the funds.

Section 6331 of the Internal Revenue Code is the chief provision governing the levy power of the IRS. It provides, in relevant part:

(a) Authority of Secretary.—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property ... belonging to such person ...

b) Seizure and sale of property.—The term "levy" as used in this title includes the power of distraint and seizure by any means ... In any case in which the Secretary may levy upon property or property rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

I.R.C. § 6331.

A considerable number of courts have held that when the IRS serves a levy upon a

with respect to, property or rights to property subject to levy, including receivables, bank accounts, evidences of debt, securities, and salaries, wages, *commissions,* or other compensation.
Treas.Reg. § 301.6331–1(a)(1) (emphasis added).

5. It should be noted that, although notice of seizure is unnecessary for intangibles, many forms of intangibles are nevertheless saleable. The rights of redemption and surplus might still be applicable to these; unlike cash or cash equivalents. In such cases, only a sale would transfer ownership away from the debtor.

saleable asset (tangible and intangible alike), the debtor is left with two significant interests in the property prior to the sale.[6] The debtor retains the right to redeem the property by paying his delinquent taxes [7] and the right to receive any surplus arising from the sale.[8] *In re Brown*, 126 B.R. at 770. These rights leave enough residual interest in the property that it must be turned over to the bankruptcy estate.

However, nonsaleable assets (i.e., cash or cash equivalents) are a different matter. "A pre-petition levy on cash or its equivalent is distinguishable from a pre-petition levy on personal property." *Imperial Gardens Liquidating Trust v. Northwest Commons, Inc. (In re Northwest Commons, Inc.)*, 136 B.R. 215, 219 (Bankr.E.D.Mo.1991). When the IRS completes its levy upon nonsaleable assets, the debtor is divested of any remaining property interests in them. In such cases, the rights of redemption and surplus are not applicable. It is difficult to imagine that the debtor would seek to redeem cash or its equivalent by paying an equal or greater amount of cash (the amount of taxes owed) or that a surplus would be generated by sale of the cash for more than its face value. *Professional Technical Servs., Inc. v. IRS (In re Professional Technical Servs., Inc.)*, 71 B.R. 946, 950 (Bankr.E.D.Mo.1987). Indeed, since the Service's purpose in selling levied property is to convert it to ready cash, the sale of cash itself makes no sense. An IRS levy cannot, of course, exceed the amount of tax liability involved. Thus the value of cash or cash equivalent levied upon can never exceed the tax debt. However, when the tax debt exceeds the amount of cash levied upon, the taxpayer has no effective right of surplus.

Almost without exception, the case law holds that a prepetition levy on cash excludes it from the bankruptcy estate.[9] The case law is not uniform, however, with regard to other forms of intangible property. Disagreement has arisen over the question of which intangibles constitute cash equivalents. To the extent the debtor's levied commissions here can be considered an intangible other than cash, it is necessary to address the case law on analogous property interests, such as bank accounts and accounts receivable. Although the courts are divided,[10] in my opinion those cases which have held that the debtor retains a sufficient property interest in such intangibles either fail to identify the debtor's remaining interest or simply state that bank accounts and accounts receivable are always theoretically saleable properties so that redemption and surplus rights apply. However, as the court in *Professional Technical Services* pointed out, an equitable interest exists in these type assets only where the property value exceeds the tax levy or the amount is disputed, leaving the possibility of

---

6. *See, e.g., In re McLaughlin*, 139 B.R. at 9, 11; *Rose v. Commercial National Bank (In re Rose)*, 112 B.R. 12, 15 (Bankr.E.D.Tex.1989); *In re Professional Technical Servs.*, 71 B.R. 946, 949 (Bankr.E.D.Mo.1987).

7. *See* I.R.C. § 6337. The debtor may redeem levied-upon real estate at any time within 180 days after the sale. I.R.C. § 6337(b).

8. *See* I.R.C. § 6342 for the full text of this provision.

9. *See In re Anaheim Elec. Motor, Inc.*, 137 B.R. 791, 796–97 (Bankr.C.D.Cal.1992); *In re Sigmund London, Inc.*, 139 B.R. at 770; *In re Brown*, 126 B.R. at 771; *In re Northwest Commons, Inc.*, 136 B.R. at 219–220 n. 4; *In re McLaughlin*, 139 B.R. at 11; *In re Rose*, 112 B.R. at 15; *In re Professional Technical Servs. Inc.*, 71 B.R. at 950; *DiFlorio*, 30 B.R. at 818. *But see SPS Technologies, Inc. v. Baker Material Handling Corp. (In re E.C. Campbell, Inc.)*, 153 B.R. 148, 152–53 (E.D.Pa.1993); *In re Cleveland Graphic Reproduction, Inc.*, 78 B.R. 819, 824 (Bankr.N.D.Ohio 1987) (prepetition levy on cash was property of the estate where such cash was essential to chapter 11 debtor's rehabilitation efforts).

10. Some courts have held that levies on prepetition bank accounts are immune from turnover. *See Diflorio*, 30 B.R. at 815; *In re Brown*, 126 B.R. at 767; *In re Rose*, 112 B.R. at 12.

Other courts have reached the opposite conclusion. *See In re Davis*, 35 B.R. at 795; *In re Dunne Trucking Co.*, 32 B.R. at 182; *Debmar Corp. v. United States (In re Debmar Corp.)*, 21 B.R. 858 (Bankr.S.D.Fl.1982).

An IRS levy on accounts receivable prepetition has been held to extinguish the debtor's interest in the receivables. *See Professional Technical Servs., Inc.*, 71 B.R. at 952; *see also Cross Elec. Co. v. United States*, 664 F.2d 1218 (4th Cir. 1981). *But see In re Anaheim*, 137 B.R. at 791; *In re AIC Indus., Inc.*, 83 B.R. at 774; *In re Suppliers, Inc.*, 41 B.R. 520 (Bankr.E.D.Ky. 1984).

surplus. 71 B.R. at 950; *In re Brown,* 126 B.R. at 773. As with cash, where the tax levy is greater than the value of the cash equivalent property, no equity interest is possible. This was also the logic employed by the Fourth Circuit in *Cross Electric* where the court held that a prepetition levy on an account receivable, the tax debt being greater than the value of the receivable, transferred the debtor's property interest to the government. *Cross Electric Co. v. United States,* 664 F.2d 1218, 1220–21 (4th Cir. 1981).

Moreover, in the cases where the tax debt exceeds the cash equivalent property the right of redemption is meaningless. Common sense suggests that debtors will redeem levied property only when they believe the property is worth more than the tax debt. This would be the case if the debt actually were less than the value of the property at the time of the levy, if future appreciation of the property were expected to make it worth more than the debt, or if the property were part of an operating business whose value to the business as a going concern would be greater than if "sold for scrap." *Whiting Pools,* 462 U.S. at 203, 103 S.Ct. at 2312 (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 220 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787.

■ Hence, the mere fact that redemption and surplus rights are theoretically applicable to property such as bank accounts or accounts receivable is not dispositive. The particular facts of each case must be examined. Following the reasoning of *Cross Electric* and *In re Professional Technical Services,* the right to redeem levied funds makes no sense if doing so requires an equal or greater amount of money. The debtor here would have to satisfy his tax liability of $39,746.58 in order to redeem a check worth $6,800.00. As the Fourth Circuit in *Cross Electric* noted, such a concept is "incredible." 664 F.2d at 1221. To be applicable, the right of redemption must have substance.

Here, the debtor obviously did not have a meaningful redemption or surplus right exceeding his levied earnings at the time he filed for bankruptcy. Under the above analysis, the IRS' prepetition levy effectively extinguished the debtor's property interest in the funds. Since the amount of the debtor's tax debt under the levy far exceeds any proceeds that would be realized from a theoretical sale of his commissions no surplus for the debtor could possibly arise.

This court therefore holds that the debtor is not entitled to a turnover of the funds recovered by the IRS under its levy.

The debtor relies exclusively on the Supreme Court decision, *United States v. Whiting Pools, Inc.,* to support his position that the levied funds at issue properly belong to the bankruptcy estate. In *Whiting Pools,* the IRS seized defendant corporation's tangible personal property (equipment, vehicles, inventory, and office supplies) one day before bankruptcy was filed. *Whiting Pools,* 462 U.S. at 199–200, 103 S.Ct. at 2311. Determining that the prepetition seizure had not extinguished debtor's ownership of the property, the Court ordered the property turned over to the bankruptcy estate. *Whiting Pools,* 462 U.S. at 198–199, 103 S.Ct. at 2310–2311.

There are, however, substantial differences between the facts in *Whiting Pools* and this case. Key to the Supreme Court's decision was the fact that the value of the tangible property levied upon was greater than the tax levy. *Whiting Pools,* 462 U.S. at 211, 103 S.Ct. at 2317. Accordingly, *Whiting Pools* stands for the proposition that a debtor's interest in *tangible* property is not extinguished by a prepetition government levy which is in an amount less than the value of the property seized. *See DiFlorio v. United States,* 30 B.R. 815, 818 (N.D.N.Y.1983). *But see SPS Technologies, Inc. v. Baker Material Handling Corp. (In re E.C. Campbell, Inc.),* 153 B.R. 148, 152–53 (E.D.Pa.1993).

Moreover, the *Whiting Pools* opinion contemplates saleable property and does not speak to the effect of prepetition levies on property not amenable to sale, specifically cash and cash equivalents. *In re Brown,* 126 B.R. at 772. For example, addressing the tax sale provision of the Internal Revenue Code, the Supreme Court stated that "until such a sale takes place, the property remains the debtor's and thus is subject to the turn-

over requirement of § 542(a)." *Whiting Pools,* 462 U.S. at 211, 103 S.Ct. at 2317. Because divesting a debtor of a property interest in cash or cash equivalents does not require a sale and since the Supreme Court in *Whiting Pools* focused entirely on saleable forms of property, the case does not support the debtor's position here that he retains post levy rights in cash or cash equivalent property, the sales commissions. *In re Brown,* 126 B.R. at 772.[11]

Therefore, *Whiting Pools* does not apply to this case. Contrary to the debtor's assertion, it is not controlling when cash or cash equivalents are involved. In sum, this court finds that the Fourth Circuit's decision in *Cross Electric* remains binding precedent in this district.[12]

Accordingly, the IRS notice of levy upon the debtor's February commissions, which occurred before the filing of the bankruptcy petition, was sufficient to divest the debtor of all legal or equitable interests in those funds. As such, the turnover provisions of § 542 of the Bankruptcy Code do not apply.[13]

A separate order will be entered.

---

**11.** Additionally, a prominent consideration for the Court in *Whiting Pools* was the legislative purpose behind chapter 11 bankruptcy. The Court noted that the goal of chapter 11 reorganization was to resuscitate "troubled enterprises," enabling them to operate successfully in the future. 462 U.S. at 201, 103 S.Ct. at 2311. The Court recognized that the property levied in *Whiting Pools* was essential to the functioning of the business, and liquidating such property would undermine Congress' purpose in enacting chapter 11. *Whiting Pools,* 462 U.S. at 203–04, 103 S.Ct. at 2313. This concern, however, has no bearing on the chapter 13 case involved here. There is nothing to suggest that levying this individual debtor's check will impair his ability to generate income in the future or reorganize his finances. *See In re Brown,* 126 B.R. at 772. Moreover, "to hold that a debtor may evade an administrative IRS levy by declaring chapter 13 bankruptcy and bringing into the bankruptcy estate funds to which he has no identifiable interest would be to undermine the important Congressional objectives inherent in the collection provisions of the Internal Revenue Code." *In re Brown,* 126 B.R. at 776–77.

**12.** Recently, Chief Judge Bostetter of this district issued a bench opinion that is very similar in its conclusions. *Panas & Smith v. Commissioner of Revenue, Arlington County, et. al.,* Case No. 93–11837–AB, Ad. Pro. No. 93–1186 (Bankr.E.D.Va. July 13, 1993). In *Panas & Smith,* the court held that the issue of prepetition levies upon cash and cash equivalent property is controlled by *Cross Electric.* The court was also careful to distinguish *Whiting Pools* as applying only to tangible property, not cash or cash equivalents.

The Supreme Court in *Whiting Pools* did not say that it was overruling *Cross Electric.* Rather, the Supreme Court noted only that the Second Circuit believed its ruling was contrary to *Cross Electric. Whiting Pools,* 462 U.S. at 202, 103 S.Ct. at 2313.

Specifically, the Second Circuit stated:

The question on this appeal is whether a debtor in possession ... is entitled to an order, under §§ 542 or 543 of the Code, requiring the Internal Revenue Service (IRS) to turn over *tangible assets* of the debtor on which the IRS had levied ... [prepetition].... The only other court of appeals that has considered the issue has answered it in the negative, *Cross Electric, Inc. v. United States,* 664 F.2d 1218 (4 Cir.1981).
*United States v. Whiting Pools, Inc.,* 674 F.2d 144, 145 (2nd Cir.1982) (emphasis added).

It seems that the Second Circuit erroneously assumed that *Cross Electric* involved "tangible assets." In some cases creditors have attempted to argue that *Cross Electric* extends beyond levies on cash and cash equivalents. *See, e.g., In re Montgomery,* 29 B.R. 609, 610–11 (Bankr. E.D.N.C.1983) (relying on *Cross Electric,* creditor argued that repossessed automobile was no longer property of the estate, but court disagreed).

Stated simply, in my view *Cross Electric* is not in conflict with *Whiting Pools. Contra SPS Technologies, Inc. v. Baker Material Handling Corp., (In re E.C. Campbell, Inc.),* 153 B.R. 148 (E.D.Pa. 1993).

**13.** Even a definition of property as broad as that in § 541 of the Bankruptcy Code "cannot bring property within the ambit of the debtor's estate if the debtor has no property interests at the commencement of ... [the] ... proceeding." *In re Professional Technical Servs.,* 71 B.R. at 949.

Finally, it should be noted that while the court has determined that the $6,800.00 payment received by IRS prepetition is not an asset of the estate, it is doubtful that the opposite result would benefit this debtor. At the very least, the funds would constitute cash collateral under § 363(a), and it is extremely unlikely, given the amount of the tax lien, that the debtor could provide adequate protection to the IRS for his use of the funds toward a chapter 13 plan.