In re James J. BOUTILIER, Debtor.

James J. BOUTILIER, Plaintiff,

v.

UNITED STATES of America, and First Interstate Bank, and J. Glenwood Strickler, Trustee, Defendants.

Bankruptcy No. 7–95–02556.
Adv.P. No. 7–95–00235A.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

March 14, 1996.

over to the trustee, they should be paid to the debtor once the debtor's exemption is established.

Lance M. Hale, Roanoke, Virginia, for debtor.

James J. Wilkinson, Washington, DC, for United States.

J. Glenwood Strickler, Trustee, Roanoke, Virginia.

## DECISION AND ORDER

ROSS W. KRUMM, Chief Judge.

At Harrisonburg Roanoke in said District this 14th day of March, 1996:

The matter before the court is the United States' motion to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), which ap-

plies to this adversary proceeding through Federal Rule of Bankruptcy Procedure 7012. For the reasons stated herein, the motion to dismiss is denied.

### Facts

On October 3, 1995, the plaintiff, James J. Boutilier (herein Boutilier), filed a Chapter 13 petition, and on October 24, he filed this adversary proceeding. His complaint states that the I.R.S. has issued a Form 668A levy on his Individual Retirement Account (IRA) at First Interstate Bank (herein First Interstate) and that continuing the levy would remove an asset from his bankruptcy estate that is necessary to his successful reorganization. Also, the complaint states that the IRA is comprised of mutual funds.[1] Finally, the debtor alleges that the levy creates a taxable event, thereby causing irreparable harm.[2] The complaint requests injunctive relief and an order that the IRA is protected by the automatic stay. Separately, Boutilier requested a temporary restraining order to prevent the I.R.S. from taking any action with regard to the IRA until further order of the court.

On October 25, the court heard the parties by telephone conference on Boutilier's request for a temporary restraining order. The parties disagreed as to whether the I.R.S. had levied upon Boutilier's IRA before or after he filed his Chapter 13 petition. Counsel for Boutilier, Lance M. Hale, Esquire, stated that the levy was postpetition, while counsel for the United States, James J. Wilkinson, Esquire, stated that the levy was prepetition. The parties then presented argument on whether the IRA is property of the estate, and thereby protected by the automatic stay, if the levy took place prepetition.

The court deferred ruling on when the IRA was levied upon and whether it is an asset of the estate in order to give the parties an opportunity to submit briefs. The parties agreed to the following course of action: the United States would file a 12(b)(6) motion to dismiss Boutilier's complaint with a supporting brief, Boutilier would have two weeks to file a responsive brief, oral argument would be heard on the motion to dismiss on December 15, 1995, and the United States would not take further action with regard to the IRA pending decision on the motion to dismiss.

At oral argument, the parties again disagreed as to whether the I.R.S. levied on the IRA prepetition or postpetition. Therefore, the court ordered Mr. Wilkinson to file the Notice of Levy served upon First Interstate with the court. The court then heard argument on whether Boutilier's IRA is an asset of the Chapter 13 estate if it was levied upon prepetition and took that issue under advisement.

On January 10, 1996, the Notice of Levy served on First Interstate was filed with the court. It is date-stamped September 32, 1995. Along with the Notice of Levy the IRS filed a document styled "Declaration of David L. Workman" in which Mr. Workman declares, under penalty of perjury, that he is First Interstate's IRA administrator, that he received the Notice of Levy on October 2, 1995, and that the September 32 stamp is an error which occurred because the stamp machine was not adjusted after September 30, 1995 to read October 1, 1995.

The Notice of Levy states that Boutilier owes taxes, with statutory additions, in the approximate amount of one hundred and eighty-eight thousand dollars ($188,000) for the tax period ended September 30, 1987 and that it attaches to IRAs and any other funds First Interstate is holding for Boutilier.[3] The Notice of Levy provides that the recipient is required to "turn over to us ... [the tax debtor's] property and rights to property (such as money, credits, and bank deposits) that you have or which you are obligated to pay this person." It also states that the recipient should respond to the levy by mak-

---

1. Since the complaint was filed, Boutilier has averred that the IRA also contains common stock.

2. The thrust of this allegation is that liquidation of the IRA will trigger a taxable event in the form of a tax and a penalty for early withdrawal of the IRA assets.

3. Boutilier contests the amount of tax owed and has filed an objection to the claim of IRS.

ing a check or money order payable to the I.R.S.

In his brief, Boutilier does not state the IRA's value. In its brief, the United States claims that to its knowledge, the IRA's value is $14,000.

### Positions of the Parties

#### A. WHETHER THE LEVY WAS COMPLETED PREPETITION

The United States claims that First Interstate received its Notice of Levy on October 2, 1995, one day prior to the date Boutilier filed his petition, and relies upon the Notice of Levy and accompanying Declaration of David L. Workman to support its position.

Boutilier claims that Mr. Workman reported that he did not receive the Notice of Levy until October 5, 1995. However, he has not provided evidence to support that claim.

#### B. WHETHER THE IRA IS PROPERTY OF THE BANKRUPTCY ESTATE IF THE LEVY WAS COMPLETED PREPETITION

The United States argues that the IRA is an intangible asset which is not subject to being sold at a tax sale and is worth less than Boutilier's tax debt; therefore, Boutilier's interest in the IRA was extinguished once First Interstate received the notice of levy. Given these facts, the United States concludes that the IRA was not property of Boutilier's Chapter 13 estate when he filed.

Boutilier argues that he can be divested of his ownership of the IRA only by an I.R.S. sale of the common stock and mutual funds of which it is comprised. Because such a sale did not take place prior to the date he filed his Chapter 13 petition, Boutilier concludes that he remains the owner of the IRA and, therefore, that it is property of the estate under 11 U.S.C. § 541.

### Discussion

#### A. THE LEVY WAS COMPLETED PREPETITION

■ The only evidence before the court as to when the Notice of Levy was received by First Interstate is a copy of the Notice of Levy and the declaration of Mr. David Workman that he is First Interstate's IRA administrator and that he received the Notice of Levy on October 2, 1995. Mr. Workman's declaration was given under penalty of perjury, and Boutilier has not offered any evidence suggesting that the levy took place postpetition. Therefore, the court finds that First Interstate received the Notice of Levy prepetition.

The Supreme Court has stated that when the I.R.S. levies upon an intangible asset, the service of a Notice of Levy upon the holder of the asset is sufficient to complete the levy. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350, 97 S.Ct. 619, 627, 50 L.Ed.2d 530 (1977) (citing Treasury Regulation § 301.6331–1(a)(1)[4] to support the proposition that "[because intangible property is not susceptible of physical seizure, posting, or tagging, levy upon it is effected by serving the appropriate form upon the party holding the property or rights to property."). *See also U.S. v. Donahue Industries, Inc.*, 905 F.2d 1325, 1330 (9th Cir.1990).

■ The court is satisfied that IRAs, stocks, and mutual funds constitute intangible assets. *In re Crosier*, 1991 WL 353282, *6 (Bankr.C.D.Cal. 1991) (an IRA is intangible property); Black's Law Dictionary 809 (6th ed. 1990) (defining "Intangible property" as "such property as has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, promissory notes, copyrights, and franchises."). Therefore, the court finds that the I.R.S. completed its levy upon Boutilier's IRA prepetition and that this gave the IRS a lien on the property held by Interstate for the benefit of Boutilier.

---

**4.** Treasury Regulation § 301.6331–1(a)(1) states that "Levy may be made by serving a notice of levy on any person in possession of, or obligated with respect to, property or rights to property subject to levy, including receivables, bank accounts, evidences of debt, securities, and salaries, wages, commissions, or other compensation."

## B. THE IRA IS PROPERTY OF THE BANKRUPTCY ESTATE

### 1) *The levy did not extinguish Boutilier's ownership of the IRA*

■ In *United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court decided whether a completed I.R.S. levy transfers ownership of the property to the I.R.S. The debtor in *Whiting Pools* was a corporation in the business of selling, installing, and servicing swimming pools. It filed a Chapter 11 petition one day after the I.R.S. seized its tangible personal property pursuant to levy under section 6331 of the Internal Revenue Code. *Id.* at 198–99, 103 S.Ct. at 2309–11. The debtor's tax debt was approximately $92,000. The property seized by the I.R.S. had an estimated liquidation value of, at most, $35,-000, and an estimated going-concern value in the debtor's hands was $162,876. *Id.* at 200, 103 S.Ct. at 2311.

*Whiting Pools* holds that an I.R.S. levy does not "determine the Service's rights to the seized property, but merely bring[s] the property into the Service's legal custody." *Id.* at 211, 103 S.Ct. at 2316. Further, it states that "[o]wnership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale," (citing *Bennett v. Hunter*, 9 Wall. 326, 19 L.Ed. 672 (1869)[5] and that "[u]ntil such a sale takes place, the property remains the debtor's and thus is subject to the turnover requirement of § 542(a)." *Id.* at 211, 103 S.Ct. at 2317. In arriving at its conclusion, the Court cited 26 U.S.C. § 6339(a)(2), which states that a certificate of sale arising from a tax sale "[s]hall transfer to the purchaser all right, title, and interest of the party delinquent in and to the property sold." The Court also referenced 26 U.S.C. § 6335(a), which refers to the tax debtor as the owner of seized property until it is sold,[6] and 26 U.S.C. § 6342(b), which obligates the I.R.S. to re-turn to the debtor the surplus proceeds of a tax sale. *Id.*

The ruling in *Whiting Pools* was confined to Chapter 11 reorganization proceedings and the Supreme Court expressed no view on the applicability of its holding as to the "broad effect" of section 542(a) in "adjustment of debt proceedings." *Id.* at 208 n. 17, 103 S.Ct. at 2315 n. 17. However, there are several points made in the opinion which are helpful in deciding this case. First, *Whiting Pools* characterizes the position of the IRS as a lien creditor in the bankruptcy proceeding. *Id.* at 202, 210–211, 103 S.Ct. at 2312, 2316–17. Second, nowhere in the opinion is there any discussion, must less holding, which would lead one to the conclusion that the act of levy divests the debtor of all interests in the property so as to exclude the property from the broad definition of property of the estate under 11 U.S.C. § 541. *Id.* at 204–205, 103 S.Ct. at 2313–14. Third, the enforcement provisions of the Internal Revenue Code "do not transfer ownership of the property to the IRS." *Id.* at 210, 103 S.Ct. at 2316. Fourth, *Whiting Pools* does not make a distinction between tangible and intangible property of the debtor.

■ This court is satisfied that *Whiting Pools* stands for the proposition that when the IRS levies on assets of the debtor prepetition it elevates itself to the status of a prepetition secured creditor with special statutory liquidation rights under the Internal Revenue Code and that the arrival of bankruptcy prior to completion of the exercise of those special statutory rights permits the IRS to assert in the proceeding its lien status and to take steps in the proceeding to obtain relief to exercise its lien rights by sale. Further, there is no indication in *Whiting Pools* that property which can be defined as "intangible" or "cash or cash equivalent" should serve as a reason to carve out such property from section 541 and transform the lien status of IRS to one which is tantamount to ownership. This court disagrees with those

---

**5.** In the *Bennett* case, the Chief Justice wrote "[t]he title, indeed, was forfeited by non-payment of the tax; in other words it became subject to be vested in the United States, and, upon public sale, became actually vested in the United States or in any other purchaser; but not before such public sale." *Id.* at 336–37.

**6.** Section 6335(a) states, in pertinent part, that "[a]s soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property...."

cases which, in attempting to sort out if property is property of the estate, try to draw a distinction between tangible and intangible property or property which is cash or cash equivalent. It appears to this court that the more logical approach is to treat the property as property of the estate subject to the lien of the IRS. Then all parties may litigate in the bankruptcy proceeding their respective rights in and to the property. Such a rule is consistent with the reasoning of the Supreme Court in *Whiting Pools*. This position is also consistent with the holding of *Cross Elec. Co., Inc. v. United States,* 664 F.2d 1218, 1220 (4th Cir.1981):

> With the filing of a bankruptcy petition, all property of the debtor, wherever located, and even though the debtor be out of the immediate possession thereof, is required by Sections 541 and 542 of the Bankruptcy Code to be 'deliver[ed] to the trustee....' These Sections, however, do not 'expand the debtor's rights against others more than they exist[ed] at the commencement of the case'; they simply transfer to the debtor the debtor's interests in property as it existed at the time of the commencement of the bankruptcy proceedings and if those interests were limited at that time, the trustee's rights to possession are similarly limited.

4 Collier on *Bankruptcy,* ¶ 541.01, pp. 541–5—541–7 (15th ed. 1979).

 In *Cross Electric,* the reversible error was in dissolving the levy. Instead, the Fourth Circuit told the District Court and Bankruptcy Court that a proper analysis would have led to a finding that the IRS "is entitled to collect the account pursuant to its levy." *Id.* at 1221.[7] Thus, a fair reading of

*Cross Electric* is that absent some meaningful rights of the debtor's estate in the property subject to the IRS levy, the bankruptcy court should release the IRS from the stay and let it exercise its statutory collection rights.

In the case at bar, the asset levied upon is an IRA which contains stock and mutual funds. These assets are susceptible of sale and that is the only way that the IRS could realize on its levy prepetition.[8] Until the sale, the debtor has a right of redemption and whether that right is meaningful must be determined in the bankruptcy proceeding and in the context of determining the rights of the various parties' interests in the asset.[9]

### Conclusion

Boutilier's IRA is property of the estate and is protected by 11 U.S.C. § 362. The parties must litigate their respective rights to the property in the Chapter 13 proceeding. Accordingly, it is

### ORDERED:

That the Rule 12(b)(6) motion of the United States be, and it hereby, is DENIED.

---

**7.** This result obtained because the record on appeal clearly showed that the trustee had no intention of redeeming and that there was no likelihood of surplus. The facts in the case at bar are not yet fully developed enough for this court to so rule.

**8.** *In re Eisenbarger,* 160 B.R. 542, 545 (Bankr. E.D.Va.1993), states at f.n. 5: "It should be noted that, although notice of seizure is unnecessary for *intangibles, many forms* of *intangibles* are nevertheless saleable. The rights of redemption and surplus might still be applicable to these, unlike cash or cash equivalents. In such cases,

only a sale would transfer ownership away from the debtor."

**9.** In this case, the right of redemption may take on significance for the debtor when the amount of the IRS claim is determined because he may be able to structure a plan for redemption over the plan payment period. Also, the asset value to the debtor may be greater than its fair market value because of the tax consequences of its liquidation. Thus, it is premature to say that the value of the claim so far exceeds the value of the asset as to render rights of the debtor meaningless.