In re Steven E. FANDRE and Kathleen P. Fandre, Debtors.

Steven E. FANDRE and Kathleen P. Fandre, Plaintiffs,

v.

DISTRICT DIRECTOR, DALLAS DISTRICT, INTERNAL REVENUE SERVICE, and First Coppell Bank, Defendants.

Bankruptcy No. 93–40585–S.
Adv. No. A–93–4070.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

May 10, 1994.

Robert D. Lybrand, Dallas, TX, for debtors Steven E. Fandre and Kathleen P. Fandre.

Hobart Miller, Dept. of Justice, Dallas, TX, for U.S. on behalf of its agency the I.R.S.

Charles L. Williams, Irving, TX, for First Coppell Bank.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now before the Court the First Amended Complaint of Steven E. and Kathleen Fandre, hereinafter referred to as ("Debtors") to Avoid Preference and Determine Dischargeability of Debt pursuant to regular setting in Plano, Texas. Pursuant to a joint pre-trial order all parties have waived oral hearing and requested that this Court address the issues presented in this case through consideration of motions for summary judgment previously filed by each party. This opinion constitutes findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052 and disposes of all issues presented to this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are not disputed. Prior to seeking relief under Chapter 11 of the Code, Debtors were indebted to the Internal Revenue Service, hereinafter referred to as ("IRS") in the following amounts:

| Period | Tax Due | Penalty | Interest | Total |
|--------|---------|---------|----------|-------|
| 1988 | $ 5,920.00 | $ 916.57 | $2,873.34 | $ 9,709.91 |
| 1991 | $48,857.00 | $4,953.41 | $4,074.24 | $57,884.65 |
| 1992 | $14,056.00 | $ 824.68 | $ 37.79 | $14,918.47 |

Pursuant to two notices of tax lien filed in the real property records of Dallas County, Dallas, Texas on February 4 and February 9, 1993 the IRS claims secured status for 1988 and 1991 taxes. As for the 1992 taxes, the IRS claims that $14,093.79, representing the tax due together with accrued interest, has the status of an unsecured priority claim. See 11 U.S.C. § 507(a)(7). The $824.68 penalty portion has the status of a general unsecured claim.

In February and March, 1993, Debtors made two voluntary payments of $1,250.00 each to the IRS. These payments were applied to Debtors' 1988 tax liability. On April 19, 1993, the IRS served a notice of levy on First Coppell Bank, hereinafter referred to as ("FCB"). At that time, Debtors account at FCB had a balance of $8,919.75. The notice of levy stated that any amounts recovered by the IRS were to be applied to Debtors' 1988 and 1991 tax liability. Ten days later Debtors filed for relief under Chapter 11 of the Code. The amount in controversy at FCB has since been deposited in the registry of the Court.

Debtors argue that both the $2500.00 voluntary payment and the IRS's attempt to obtain the FCB funds are avoidable preferences pursuant to 11 U.S.C. § 547(b) [1]. Debtors also seek a determination by this Court that the tax liability for the tax period ending December 31, 1988 is dischargeable. Although no statutory basis is advanced, the Court presumes that Debtors are relying on 11 U.S.C. § 523(a)(1). The IRS does not dispute that Debtors' personal liability for the 1988 taxes is dischargeable; however, the IRS claims a continuing in rem interest in any property securing any notices of tax lien for the year 1988. Furthermore, the IRS, asserting various legal theories which require examination, disputes that either transaction is an avoidable preference. Neither the IRS nor Debtor assert a claim against FCB. However, FCB asserts that it is entitled to its attorneys' fees expended in interpleading the funds at issue into the registry of the Court. FCB seeks recovery of its attorneys' fees from either the funds in the registry of the Court or as a personal judgment against

---

1. ........ the trustee may avoid any transfer of an interest of the debtor in property—
  (1) to or for the benefit of a creditor;
  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
  (3) made while the debtor was insolvent;
  (4) made—
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
  (5) that enables such creditor to receive more than such creditor would receive if—
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

the losing party in this preference action. Should the IRS prevail in the preference action the IRS disputes FCB's entitlement to recover any attorneys' fees from the funds in the registry of the Court. Debtors have agreed to pay FCB's attorneys' fees in the event the preference action is decided against them. FCB's claimed attorneys' fees in the amount of $995.00 are stipulated to be reasonable.

## DISCUSSION OF LAW

■ Clarification of the status of each of the transfers in question requires an analysis of the effect of an IRS tax lien in the context of traditional preference applications. An IRS tax lien is a creature of statutory construction. It arises automatically at the time of a tax assessment and encompasses all of a debtor's property and rights to property whether real or personal. *See* 26 U.S.C. §§ 6321 [2], 6322 [3]. However, despite the wide breadth of this lien, it is ineffective against several classes of parties unless certain filing requirements are met. 26 U.S.C. § 6323(f) (This section generally requires compliance with State laws pertaining to the perfection of security interests). Assuming that such filing requirement are satisfied the IRS is granted the status of a perfected security interest holder.

In this case, the statutory lien provided by 26 U.S.C. § 6321 arose for Debtors' 1988 tax liability on August 6, 1990, upon assessment, and the tax lien for 1991 taxes arose as a result of a June 1, 1992, assessment. On February 4 and 9, 1993, the IRS perfected its security interest in Debtors' real property by filing proper notices of tax lien pursuant to 26 U.S.C. § 6323(f)(1)(A)(i) and Texas Property Code § 11.001 in Dallas County, Texas. There is no indication of any other lien filing in the stipulated facts presented to the Court. These stipulated facts, with the exception of the statutory lien that arose upon assessment of the tax liability are not dispos-

itive of this case. The Court concludes that the filing of the notice of tax lien to perfect the security interest in real estate against claims of third parties or purchasers has no effect on the IRS right to the cash in question in the instant case.

■ Texas state law provides that a secured party may perfect a security interest in cash only by possession. Tex.Bus. & Com. Code Ann. § 9.305. Through the voluntary payment of the $2,500.00 by the Debtors the IRS has, at the very least, perfected its security interest in this amount.

■ Similarly, the IRS's interest in the FCB funds is established. In *In re Rose*, 112 B.R. 12 (Bankr.E.D.Tex.1989), an earlier opinion dealing with substantially the same issue presented here, this Court considered the effect of the filing of an IRS notice of levy on a debtor's cash accounts. Distinguishing the Supreme Court's holding in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (bankruptcy estate has sufficient rights in tangible property seized pursuant to a notice of levy for such property to be property of the bankruptcy estate) on the basis that the rights present in the case of tangible goods i.e. right of redemption, right to surplus, were inapplicable in the context where the IRS has seized cash in an amount insufficient to satisfy the tax lien, the Court concluded that the debtor retained an insufficient interest in the cash for it to be considered property of the estate. Here as there, the cash seized pursuant to the notice of levy is insufficient to fully satisfy the tax lien. In accordance with the *Rose* decision, this Court finds that the FCB accounts are no longer property of the estate. *See also In re Eisenberger*, 160 B.R. 542 (Bankr.E.D.Va.1993); *In re Abercrombie*, 156 B.R. 782 (Bankr. N.D.Tex.1993); *In re McLaughlin*, 139 B.R. 9 (N.D.Ohio 1991); *contra In re Nat'l Center*

---

**2.** If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

**3.** Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

*for Emp. of the Disabled,* 157 B.R. 291 (Bankr.W.D.Tex.1993); *In re Metro Press, Inc.,* 139 B.R. 763 (Bankr.D.Mass.1992). The Court must now address whether these transactions withstand preference analysis.

Standing alone, this Court finds that both transactions at issue meet the classic definition of a preference. 11 U.S.C. § 547(b). Each involved transfers of an interest in property to a creditor on behalf of an antecedent debt i.e. the 1988 and 1991 tax liability. 11 U.S.C. § 547(b)(1), (2). The Debtors' insolvency has not been contested and may be presumed. 11 U.S.C. § 547(b)(3), § 547(f) (For the purpose of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.). The transactions were made on or within 90 days before the date of the filing of the petition. 11 U.S.C. § 547(b)(4). Finally, prior to February 1993, the IRS had not perfected its security interest in any of Debtors' property. By improving its position in the 90 days preceding Debtors' petition for relief the IRS is obviously better off than it would be in chapter 7. For example, assuming none of the transactions had taken place the IRS claim would be totally unsecured. Although the 1991 taxes would not be dischargeable the 1988 taxes would be fully dischargeable. Absent some exception to the general preference analysis, it would seem that Debtors have carried their initial burden of demonstrating that these transactions constitute an avoidable preference.

█ The Court must agree with the IRS that an exception exists which makes these transfers not avoidable. The basis for this conclusion rests on 11 U.S.C. § 547(c)(6) which provides an exception to avoidance of a transfer "that is the fixing of a statutory lien that is not avoidable under section 545 of this title." In pertinent part, 11 U.S.C. § 545 states:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> .    .    .    .    .
>
> (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

IRS tax liens are statutory liens. By definition, a statutory lien is a "lien arising solely by force of a statute on specified circumstances or conditions ..." 11 U.S.C. § 101(53); H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977); U.S.Code Cong. & Admin.News 1978, pp. 5787, 6271 (Tax liens are included in the definition of statutory lien.). This Court must conclude that the IRS tax liens arose by virtue of 26 U.S.C. § 6322 to become inchoate liens at the time of the assessment for the 1988 and 1991 tax years. In this particular case, the filing of the notice of tax liens in the county record is of no particular moment. The action that perfects the IRS claim to the funds at issue in this case is the obtaining of possession of the cash. The IRS obtained possession of the last amount of the cash ten days prior to the date this bankruptcy proceeding was commenced. Therefore, by virtue of the perfection of the tax lien in accordance with Texas State law, the statutory lien of the IRS was perfected so that at the time of the commencement of the case no third party could have secured a superior right in the property to that of the IRS. Bankruptcy Code § 545(2) is clear that the trustee may only avoid the fixing of a statutory lien on property of the debtor to the extent that the lien is not perfected or enforceable at the time of the commencement of the case. In this case, that statutory lien could not have been avoided by the trustee and therefore, § 547(c)(6) takes away the authority of the trustee to avoid the transfer.

The Court acknowledges that the effect of the IRS's perfection of its interest in the cash is for all intents and purposes a satisfaction of indebtedness. The courts are divided over whether payments made during the preference period in satisfaction of § 547(c)(6) liens are permissible. *Cimmaron Oil Co.,* 71 B.R. 1005, 1010 (N.D.Tex.1987) (Finding that legislative history to § 547(c)(6) supports transfers in satisfaction of lien); *In re R & T Roofing Struct. & Commercial Fram.,* 79 B.R. 22, 25 (D.Nev. 1987) (§ 547(c)(6) does not protect the seizure of money in satisfaction of a lien). However, the practical factors associated

with perfecting a security interest in cash mandates that use of that cash in satisfaction of the underlying debt be protected from preferential attack. This conclusion is a result of an analysis of the options possessed by the Debtors with respect to the cash in the possession of the IRS. Much as in *In re Rose, supra,* this Court cannot identify any substantive benefits retained by Debtors vis-a-vis the cash. For the reasons previously stated, Debtors can not avoid the IRS's lien in the cash. Debtors also can not redeem the cash without paying the IRS a like amount. Similarly, Debtors would be entitled to use the cash only by providing similarly liquid adequate protection. Nor are Debtors entitled to the IRS's interest in surplus funds—there are none. Simply stated, in order to trigger Debtors' rights, these rights must have substance (paraphrasing *In re Eisenberger, supra,* at 547). In this case, Debtors' rights are substantively lacking.

Furthermore, the Court agrees with the IRS that it would be anomalous to find that the IRS's statutory lien in the cash was nonpreferential but the IRS's attempts to foreclose that lien triggered a preferential transfer. Section 547(c)(6) does not differentiate between cash or cash equivalents and tangible property—neither should the courts.

■ Debtors also dispute the right of the IRS to apply the funds in question to the payment of the 1988 taxes, penalties and interest as opposed to more recent (and non-dischargeable) tax liabilities. Debtors' dispute with the IRS is not supported. As demonstrated by the IRS, the Fifth Circuit has previously ruled that generally, the IRS has the right to apply funds it collects from tax debtors to tax debts least likely to be collected. *Liddon v. United States,* 448 F.2d 509, 513 (5th Cir.1971). Only "if a taxpayer directs that a payment be applied in a certain manner ... [must the IRS] abide by the taxpayer's direction." *Wood v. United States,* 808 F.2d 411, 416 (5th Cir.1987). Furthermore, the taxpayer loses the right of designation if the payment was made involuntarily i.e. as the result of "the presence of *court* action or administrative action resulting in an actual *seizure* of property or money as in a levy." (emphasis original) *Muntwyler v. United States,* 703 F.2d 1030, 1032–33 (7th Cir.1983). The two payments of $1,250.00,

while made voluntarily, were not made with any directions for their application. These payments have already been applied to reduce the Debtors' 1988 tax liabilities. Debtors' present request that these payments be reallocated to later tax liabilities comes too late. The status of the FCB funds is even clearer. The IRS obtained possession of these funds through levy—exactly the kind of involuntary payment which eliminates a debtor's rights to direct allocation of payment.

The Court's preceding conclusion also is relevant to Debtors' request to determine the dischargeability of the 1988 tax liability. Because this liability has been owing for in excess of three years it is not protected from discharge. 11 U.S.C. § 523(a)(1). The IRS agrees. Beyond finding that Debtors' in personam liability for the 1988 taxes is discharged as a matter of law the Court is also compelled to note that the IRS's allocation of funds obtained from Debtors, both voluntary and involuntary, appears to have had the effect of discharging Debtors' liability for these 1988 taxes as a matter of fact.

■ The last issue which must be dealt with is the status of FCB's entitlement to recover its cost of interpleading the amounts in controversy. FCB requests recovery of the $995.00 in attorneys' fees from the funds in question. In the event this request is denied FCB requests a judgment against the losing party in this action. Debtors have already agreed to pay FCB's attorneys' fees in the event the IRS prevails. Fortunately, this issue does not require a great deal of analysis. The Fifth Circuit has already held in *Spinks v. Jones,* 499 F.2d 339, 340 (1974) that "[t]he stakeholder of an interpleaded fund is not entitled to attorney's fees to the extent that they are payable out of a part of the fund impressed with a federal tax lien." Simply put, this option is unavailable to FCB. Since Debtors have already agreed to pay FCB's attorney in the event their position failed to prevail the Court finds Debtors liable to FCB in the amount of $995.00.